27 A.3d 1229 (2011)
422 N.J. Super. 214
DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for Long Beach Mortgage Loan Trust 2006-3, Plaintiff-Respondent,
v.
Constance Lawrence MITCHELL and General Motors Acceptance Corporation, Defendants, and
Jacqueline Bethea, Defendant-Appellant.
No. A-4925-09T3
Superior Court of New Jersey, Appellate Division.
Submitted May 3, 2011.
Decided August 9, 2011.
*1230 Peter A. Ouda, attorney for appellant.
Zucker, Goldberg & Ackerman, L.L.C., attorneys for respondent (Steven D. Krol, of counsel and on the brief).
Before Judges WEFING, BAXTER and KOBLITZ.
The opinion of the court was delivered by
KOBLITZ, J.S.C. (temporarily assigned).
In this mortgage foreclosure action, defendant Jacqueline Bethea, a victim of a buy-lease-back "mortgage rescue scam," appeals the order of final judgment in favor of plaintiff Deutsche Bank National Trust Co. as trustee for Long Beach Mortgage Loan Trust, (Deutsche Bank), an assignee of the note and mortgage from the original mortgagee's successor in interest. Bethea also appeals the trial court's order entering summary judgment in favor of Deutsche Bank and transferring to the Law Division her third-party complaint against plaintiff and other parties allegedly involved in the rescue scam.[1] Defendant *1231 argues that Deutsche Bank did not have standing to file the foreclosure complaint and, if it did have standing, it was not a holder in due course of the mortgage. Without evidence that Deutsche Bank possessed the note at the time of filing, and knowing that the complaint was filed prior to the assignment of the mortgage, the trial court nevertheless found that Deutsche Bank had standing. The court found that plaintiff cured the defect of filing the complaint a day before receiving the assignment by filing an amended complaint. The trial court also found that Deutsche Bank was a holder in due course of the mortgage and thus was not subject to any defenses asserted by Bethea because nothing in the transaction would have alerted the original lender or Deutsche Bank to any fraud in the underlying transaction.
After reviewing the record in light of the contentions advanced on appeal, we reverse the grant of summary judgment and final judgment and vacate the sheriff's sale, holding that Deutsche Bank did not prove it had standing at the time it filed the original complaint. The assignment was not perfected until after the filing of the complaint, and plaintiff presented no evidence of having possessed the underlying note prior to filing the complaint. If plaintiff did not have the note when it filed the original complaint, it lacked standing to do so, and it could not obtain standing by filing an amended complaint. Given that Deutsche Bank has not demonstrated standing, we cannot decide at this time whether it was a holder in due course of the mortgage.
Bethea's mother conveyed an interest in her two-family house located in Plainfield, New Jersey (Property) to Bethea on December 14, 2002. Bethea and her mother obtained a mortgage on the Property from Home American Credit Inc. d/b/a Upland Mortgage in the amount of $150,000.[2] Both the deed and the mortgage were recorded on January 10, 2003. Bethea's mother died later in 2003, and Bethea, who suffers from long-standing medical conditions, failed to keep up the mortgage payments. Bethea lives in one section of the two-family house and her son and grandson live in the other.[3]
Bethea met Steve French, president and CEO of Elite Financial Services (Elite), when seeking options to prevent foreclosure of the Property. She certified that French promised her that he could save her home and convinced her to dismiss her then-pending bankruptcy petition. Bethea certified that French proposed a buyout of the Property, which would allow her to save her home, pay off her debts, improve her credit score and allow her to remain in her home.
On February 17, 2006, French facilitated Bethea's sale of the Property to a straw-person, Constance Lawrence Mitchell, for $355,000. Mitchell obtained a mortgage in the amount of $319,500 from Long Beach Mortgage Company (Long Beach) to purchase the Property. Bethea also gave Mitchell a $35,500 mortgage on the Property.
French drove Bethea to the closing at an attorney's office. Bethea was not represented by her own lawyer at the closing. She acknowledges that she signed several papers at the closing, but claims she did not understand their significance. Bethea *1232 entered into a "Consulting Agreement" (Agreement) with Elite and French at the closing. The Agreement provided for a sale of the Property to a third party (Mitchell), but allowed Bethea to rent the home for two years with the opportunity to repurchase it within that period. The Agreement provided that Bethea would create a reserve account by setting aside $37,187 from the closing proceeds. If Bethea failed to make a rental payment, the Agreement authorized counsel to pay the rent from the reserve account. The Agreement also provided that Bethea would pay Elite a $25,000 "consulting fee." Mitchell received $10,000 from the "consulting fee."
At the closing, Bethea also entered into a "Lease Agreement With Option to Purchase" (Option) with Mitchell, allowing Bethea to rent the house for twenty-four months for an unspecified amount. Under the Option, Bethea was to pay all the "utilities and costs related to the [P]roperty" with the option to purchase the Property within twenty-four months for $319,500, the amount of Mitchell's mortgage from Long Beach.
Based on the United States Department of Housing and Urban Development Uniform Settlement Statement (HUD-1), signed at the closing by Bethea, Mitchell and the attorney, Bethea was supposed to receive $62,187.02 of the $355,000 sales price of the Property. Bethea did not receive any money directly from the sale because the $62,187.02 reflected on the HUD-1 as "cash to seller" was used to pay the $25,000 consulting fee to Elite and the remaining $37,187.02 was placed in an escrow account pursuant to the Agreement.[4]
In April 2006, French called Bethea and told her that she would have to pay $1680 per month towards her monthly rent of approximately $3000. She certified that he told her that "the balance would come out of the escrow account. . . ." Bethea stated that "she was shocked that [she] was expected to pay that much to stay in the house, . . . [because] at the time, [her] monthly income was approximately $1,195.00." Bethea certified that before she sold the house to Mitchell her monthly mortgage payment, which she was unable to keep current, was approximately $900. She certified that she made the $1680 rental payments until approximately May 2008, when French told her to stop making the payments and to start saving money to move. Bethea also certified that she paid the property taxes, utility bills and "municipal charges" after the sale of the Property to Mitchell.
On November 15, 2007, the closing attorney sent Bethea a letter informing her that the escrow account, which was used to make her rental payments, had been exhausted. He advised Bethea that it was "imperative that [she] sell this property as soon as possible" and enclosed a statement accounting for the use of the escrowed proceeds from the sale of the Property.
On May 13, 2008, Deutsche Bank filed a complaint for foreclosure against Mitchell, Bethea and General Motors Corp.[5] Bethea was named as a defendant as a result of the recorded $35,500 mortgage she gave *1233 Mitchell in connection with the sale of the Property.
On May 14, 2008, a day after the complaint was filed, Washington Mutual, successor in interest to Long Beach, assigned the mortgage to Deutsche Bank. On June 2, 2008, Deutsche Bank filed an amended complaint for foreclosure containing an additional section stating:
4. The Note and Mortgage have been assigned as follows:
4a. By assignment of mortgage from Washington Mutual Bank, successor in interest to Long Beach Mortgage Company to Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Loan Trust 2006-3, plaintiff, herein, dated 05/14/2008. Said assignment is unrecorded at this time.[6]
On September 22, 2008, Bethea filed a contesting answer containing affirmative defenses and counterclaims alleging violations of the Truth in Lending Act (TILA), 15 U.S.C.A. §§ 1601 to 1667, Home Ownership Equity Protection Act (a provision of TILA), 15 U.S.C.A. § 1602(aa), Real Estate Settlement Procedures Act, 12 U.S.C.A. §§ 2601 to 2617, and New Jersey Home Ownership Security Act, N.J.S.A. 46:10B-22 to -35. Bethea also filed a third-party complaint alleging violations of the Consumer Fraud Act, N.J.S.A. 56:8-2, common law fraud, breach of fiduciary duty and unjust enrichment against Deutsche Bank, Mitchell, French and Elite as well as the title company and the closing attorney. We are unaware of any response by Mitchell to the foreclosure complaint.
Deutsche Bank filed a motion for summary judgment to strike the contesting answer and counterclaim and to sever the third-party complaint. Bethea filed a cross-motion for summary judgment on her counterclaim and sought discovery on her third-party complaint.
On March 11, 2009, the court heard oral argument on the motion and cross-motions for summary judgment and discovery. The court granted summary judgment in favor of Deutsche Bank and found:
The fact that the HUD-1 prepared by the third-party defendants is a lie does not put the lender on notice that the seller wasn't going to be getting everything that she thought she was going to be getting out of the proceeds of the sale, the fact that she never actually got the proceeds of the sale. There's nothing that would suggest to a lender that that's what happened and that's really the crux of the fraud here.
Although the court found that the proceeds of the sale were never delivered to Bethea, it indicated that nothing in the transaction would signify fraud to the lender. The court noted that the fact that the seller continued to live in the home did "not raise any unusual fact that would put a lender on notice of some irregularity." The court decided that, although Deutsche Bank filed the complaint before receiving the assignment, Deutsche Bank cured the defect by filing an amended complaint. Accordingly, the court indicated that Deutsche Bank had standing to file the foreclosure complaint and was a holder in due course of the mortgage. The court entered an order granting summary judgment in favor of Deutsche Bank, dismissing Bethea's counterclaim and transferring her third-party complaint to the Law Division.
*1234 Deutsche Bank submitted an application for entry of final judgment, and Bethea filed a motion to deny the application on September 3, 2009. On January 8, 2010, an order was entered denying Bethea's motion.
On June 18, 2010, Bethea filed her notice of appeal of the court's March 11, 2009 order granting summary judgment in favor of Deutsche Bank and the final judgment entered on May 4, 2010. Notice of the sale of the Property scheduled for September 1, 2010, was provided to Bethea's counsel, Bethea and Mitchell. Bethea did not seek a stay pending appeal and, on September 1, 2010, Deutsche Bank purchased the Property for $100 at the sheriff's sale.
Bethea raises the following issues on appeal:
I. THE STANDARD FOR GRANTING SUMMARY JUDGMENT
II. DEUTSCHE BANK DOES NOT HAVE STANDING TO PROSECUTE THIS FORECLOSURE ACTION
III. DEUTSCHE BANK'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE THERE ARE GENUINE ISSUES OF FACT AND DISCOVERY HAD NOT BEEN COMPLETED
A. Deutsche Bank is subject to all set-offs and defenses that Bethea could have raised in an action by Deutsche Bank's assignor, Long Beach, and all of those set-offs and defenses can properly be raised in this foreclosure case
B. There are genuine issues of fact material to Bethea's claims, set-offs and defenses against Deutsche Bank
C. Bethea's claims, set-offs and defenses
D. 12 C.F.R. 560.2 does not preempt Bethea's state law claims of unconscionability and consumer fraud against Deutsche Bank. Defenses can properly be raised in this foreclosure case
Deutsche Bank argues that, as no stay of the sheriff's sale was sought and the sale was completed, we should find this appeal to be moot. We consider an issue moot when "our decision sought in a matter, when rendered, can have no practical effect on the existing controversy." Greenfield v. N.J. Dep't of Corr., 382 N.J.Super. 254, 257-58, 888 A.2d 507 (App. Div.2006) (quoting New York S. & W. R. Corp. v. State Dep't of Treasury, Div. of Taxation, 6 N.J. Tax 575, 582 (1984), aff'd, 204 N.J.Super. 630, 499 A.2d 1037, (App. Div.1985)). We will consider the merits of an issue notwithstanding its mootness if significant issues of public import appear. Joye v. Hunterdon Cent. Reg'l High Sch. Bd. of Educ., 176 N.J. 568, 583, 826 A.2d 624 (2003). Plaintiff has not demonstrated that the rights of a third party would be affected by our consideration of the issues. Given the importance of the issues raised by Bethea, we choose to address the underlying merits of the issues Bethea raises.
Plaintiff filed its foreclosure complaint the day before it was assigned the mortgage. In its original complaint, Deutsche Bank stated that "[o]n or before the date the within complaint was drafted, the plaintiff herein became owner of the note and mortgage being foreclosed herein." Deutsche Bank did not provide any proof or information in its original complaint regarding how it obtained the note. On June 2, 2008, Deutsche Bank filed an amended complaint, which listed the assignment of the mortgage, purportedly to cure the defect in the original complaint.
"`As a general proposition, a party seeking to foreclose a mortgage *1235 must own or control the underlying debt.'" Wells Fargo Bank, N.A. v. Ford, 418 N.J.Super. 592, 597, 15 A.3d 327 (App.Div. 2011) (quoting Bank of N.Y. v. Raftogianis, 418 N.J.Super. 323, 327-28, 13 A.3d 435 (Ch.Div.2010)). "In the absence of a showing of such ownership or control, the plaintiff lacks standing to proceed with the foreclosure action and the complaint must be dismissed." Ibid. Deutsche Bank did not have standing when it filed the original complaint because it did not have an assignment nor did it demonstrate that it possessed the note at that time.
Deutsche Bank argues that it is entitled to foreclose on the Property as a holder of the note. Article III of the Uniform Commercial Code (UCC), N.J.S.A. 12A:3-101 to -605, governs the transfer of a negotiable instrument. N.J.S.A. 12A:3-301 is the provision of the UCC that addresses who may enforce negotiable instruments. It provides for three categories of persons entitled to enforce negotiable instruments:
"Person entitled to enforce" an instrument means the holder of the instrument, a nonholder in possession of the instrument who has the rights of the holder, or a person not in possession of the instrument who is entitled to enforce the instrument pursuant to 12A:3-309 or subsection d. of 12A:3-418. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument. [N.J.S.A. 12A:3-301.]
Deutsche Bank does not fall within the third category set forth in N.J.S.A. 12A:3-301, which allows enforcement by someone who is not in possession of the note. N.J.S.A. 12A:3-309 addresses the enforcement of instruments that have been lost, destroyed or stolen, and "subsection d. of N.J.S.A. 12A:3-418 deals with the circumstance where an instrument has been paid or accepted by mistake and the payor or acceptor recovers payment or revokes acceptance." Ford, supra, 418 N.J.Super. at 598, 15 A.3d 327. Neither of these circumstances are present here.
Deutsche Bank also does not fit within the first category as a "holder" of the instrument, which is payable to Long Beach. N.J.S.A. 12A:3-201 to -207 governs negotiation, transfer and indorsement of instruments. "N.J.S.A. 12A:3-201(a) provides that for a person other than the one to whom a negotiable instrument is made payable to become a `holder,' there must be a `negotiation[.]'" Ford, supra, 418 N.J.Super. at 598, 15 A.3d 327. Negotiation is "a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder." N.J.S.A. 12A:3-201(a). For an instrument payable to an identified person, negotiation requires two things: "transfer of possession of the instrument and its indorsement by the holder." N.J.S.A. 12A:3-201(b).
Article III defines indorsement as "a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of negotiating the instrument." N.J.S.A. 12A:3-204(a).
Long Beach was the original holder of the note that Deutsche Bank would like to enforce, and the copy of the note provided by Deutsche Bank is not indorsed. Deutsche Bank has not established that it may enforce the note as a "holder" as provided by N.J.S.A. 12A:3-301.
Deutsche Bank may fit within the second category of "nonholder in possession of the instrument who has the rights of a holder." N.J.S.A. 12A:3-301.
Transfer of an instrument occurs "when it is delivered by a person other than its issuer for the purpose of giving to the *1236 person receiving delivery the right to enforce the instrument." N.J.S.A. 12A:3-203(a). Such a delivery, "whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument." N.J.S.A. 12A:3-203(b)
[Ford, supra, 418 N.J.Super. at 599, 15 A.3d 327.]
The UCC Comment explaining this subsection provides:
If the transferee is not a holder because the transferor did not indorse, the transferee is nevertheless a person entitled to enforce the instrument under section 3-301 if the transferor was a holder at the time of transfer. Although the transferee is not a holder, under subsection (b) the transferee obtained the rights of the transferor as holder. [N.J.S.A. 12A:3-203 Uniform Commercial Code Comment 2.]
Because Deutsche Bank has not demonstrated that it possessed the note at the time it filed the original complaint, it has not established standing under this section either. Deutsche Bank must prove it had possession of the note when it filed the complaint to obtain standing.
A federal district court has also required that other plaintiffs prove they had possession of the notes when they filed foreclosure complaints or face dismissal without prejudice of twenty-seven complaints in In re Foreclosure Cases, 521 F.Supp.2d 650 (S.D.Ohio 2007). The court noted, "[w]hile each of the complaints for foreclosure pleads standing and jurisdiction, evidence submitted either with the complaint or later in the case indicates that standing and/or subject matter jurisdiction may not have existed at the time certain of the foreclosure complaints were filed." Id. at 652. The court held that "[t]o show standing. . . in a foreclosure action, the plaintiff must show that it is the holder of the note and the mortgage at the time the complaint was filed." Id. at 653. The plaintiffs were then given thirty days to submit proofs that they had standing when the complaints were filed to prevent dismissal. Id. at 654.
Deutsche Bank could not cure the defect in the initial complaint, filed one day before obtaining the assignment, by filing an amended complaint following the assignment. See Summit Office Park, Inc. v. United States Steel Corp., 639 F.2d 1278, 1284 (5th Cir.1981) (where, after determining that the original plaintiffs did not have standing, the court required new plaintiffs with standing to file a new lawsuit instead of amending the original plaintiffs' complaint). Deutsche Bank could have established standing as an assignee, N.J.S.A. 46:9-9, if it had presented an authenticated assignment indicating that it was assigned the note before it filed the original complaint. The only evidence presented by Deutsche Bank was to the contrary. We reverse the grant of summary judgment and remand for a hearing to determine whether or not, before filing the original complaint, plaintiff was in possession of the note or had another basis to achieve standing to foreclose, pursuant to N.J.S.A. 12A:3-301.
Although our reversal of summary judgment resolves this appeal, we think it important to note that the proofs presented by plaintiff in support of summary judgment were inadequate. In Ford, supra, we explained that "[a] certification will support the grant of summary judgment only if the material facts alleged therein are based, as required by Rule 1:6-6, on personal knowledge." 418 N.J.Super. at 599, 15 A.3d 327. We held that the trial court should not have considered an assignment that was not "authenticated by an affidavit or certification based on personal knowledge." Id. at 600, 15 A.3d 327.
*1237 In support of its motion for summary judgment, Deutsche Bank provided a certification of an attorney dated January 22, 2009, which stated that "[p]laintiff is the present holder of the Note and Mortgage. A copy of the Assignment of Mortgage is attached as Exhibit B." The attorney certified that his knowledge was based upon his "custody and review of the computerized records of plaintiff which were made in the ordinary course of business as part of plaintiff's regular practice to create and maintain said records and which were recorded contemporaneously with the transactions reflected therein." This attorney certification does not meet the requirement of personal knowledge we articulated in Ford. Attorneys in particular should not certify to "facts within the primary knowledge of their clients."[7]See Pressler & Verniero, Current N.J. Court Rules, comment on R. 1:6-6 (2011); Higgins v. Thurber, 413 N.J.Super. 1, 21 n. 19, 992 A.2d 50 (App.Div.2010), aff'd, 205 N.J. 227, 14 A.3d 745 (2011).
In support of its motion for final judgment, Deutsche Bank provided a certification of proof of amount due by a specialist of JP Morgan Chase Bank, N.A., servicer for Deutsche Bank, dated June 9, 2009, stating, in part, that "[p]laintiff is still the holder and owner of the aforesaid obligation and Mortgage." However, this certification does not make any mention of the assignment of the mortgage or how the signor knows that Deutsche Bank became the holder of the note.
At oral argument in the trial court, plaintiff's counsel indicated that plaintiff had possession of the note prior to obtaining the assignment. Deutsche Bank did not present any certification based on personal knowledge stating that it ever possessed the original note.
We vacate the sheriff's sale, the final judgment and the order granting summary judgment and remand to the trial court for further proceedings in conformance with this opinion.
Reversed and remanded.
NOTES
[1] Bethea does not argue that the transfer of the third-party complaint was improper. Nor does she inform us of the status of that case. Therefore, we do not address the merits of the transfer, which is within the discretion of the trial court. R. 4:3-1(b).
[2] Defendant certified that the mortgage was for $150,000, but she only provided the first of fifteen pages of the mortgage, which does not specify an amount.
[3] We have received no information indicating that they have moved out of the Property.
[4] The HUD-1 indicates that the $292,812.98 remaining in sales proceeds was expended as follows: $23,027.53 for "settlement charges," including a tax sales certificate of $19,520.55; $19,759.04 on behalf of Mitchell for closing costs, including $9,940 in a broker's fee; $11,000 for the balance of an auto finance loan; $75 towards "FedEx payoffs"; $35,500 as a mortgage given to Mitchell by Bethea; and $203,451.41 to satisfy Bethea's outstanding mortgage.
[5] General Motors was included due to its recorded judgment for $4794.25 against Mitchell.
[6] The assignment was recorded by the Union County Clerk on October 9, 2008. The date of recordation does not affect the validity of the assignment. EMC Mortg. Corp. v. Chaudhri, 400 N.J.Super. 126, 946 A.2d 578 (App. Div.2008).
[7] Recent amendments to the Court Rules, however, now require the plaintiff's attorney in all residential foreclosure actions to attach a "certification of diligent inquiry" to the complaint and an affidavit of diligent inquiry to the motion to enter judgment, both verifying that the plaintiff's attorney spoke directly to an employee of the client or loan servicer to ensure that the information provided in the documents is accurate. R. 4:64-1(a)(2); R. 4:64-2(d). The Court's order of June 9, 2011, applied this requirement to all pending residential foreclosures where there has not been a sheriff's sale.