**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1059-17T2

U.S. BANK, NATIONAL
ASSOCIATION, AS TRUSTEE
RELATING TO THE CHEVY
CHASE FUNDING LLC
MORTGAGE-BACKED
CERTIFICATES, SERIES 2005-3,

     Plaintiff-Respondent,

v.

JIN CHOI, his/her heirs, devisees,
and personal representatives, and his,
her, their or any of their successors
in right, title and interest,

     Defendant-Appellant,

and

JI YOUNG, MIDLAND FUNDING,
LLC, BALLON STOLL BADER
& NADLER PC, and STATE OF
NEW JERSEY,

     Defendants.

_____

Submitted February 11, 2019 – Decided March 6, 2019

Before Judges Fasciale and Rose.

On appeal from Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. F-015615-14.

Joseph A. Chang, attorney for appellant (Jeffrey Zajac, on the brief).

Pluese, Becker, & Saltzman, LLC, attorneys for respondent (Stuart H. West, on the brief).

PER CURIAM

In this residential foreclosure case, Jin Choi (defendant) appeals from a September 19, 2017 final judgment. Defendant stopped making payments to U.S. Bank, N.A. (plaintiff) in 2009. Defendant contends that the judge erred by (1) finding that defendant lacked standing to challenge plaintiff's compliance with the agreement governing the mortgage; (2) finding that plaintiff proved that it possessed the promissory note and mortgage; (3) finding that plaintiff had standing to file the foreclosure complaint; and (4) granting plaintiff summary judgment. We disagree and affirm.

On July 8, 2005, defendant executed an adjustable rate, negatively amortizing note (the note) containing a prepayment penalty in the amount of $1,148,000 with an initial interest rate of 6.5% made payable to Chevy Chase Bank, F.S.B. (Chevy Chase Bank). At the same time, defendant also executed

a mortgage to Mortgage Electronic Registration System (MERS), securing repayment of the amounts due under the terms of the note. In 2008, defendant executed a Mortgage Loan Modification Agreement (the Modification Agreement) with Chevy Chase Bank, which represented an adjustable rate, negatively amortizing loan, and contained a prepayment penalty. The "lender" on the Modification Agreement was "Chevy Chase Bank, F.S.B." The acknowledgement designated Chevy Chase Bank, F.S.B. "the holder of the Deed of Trust note." In 2010, a MERS Assignment of Mortgage[1] was executed that purportedly assigned the mortgage to plaintiff.

Section 2.01 of the Pooling and Servicing Agreement (PSA) stated that Chevy Chase Funding would provide the Trustee with the original mortgage note endorsed by the originator, Chevy Chase Bank, in blank with a complete chain of endorsements from the payee to the Trustee. Chevy Chase Funding, LLC would also provide the Trustee with the

> [m]ortgage [n]ote, endorsed without recourse in either blank or to the order of U.S. Bank National Association [a]s [T]rustee . . . with all intervening endorsements

---

[1] MERS is a system that tracks ownership and servicing changes of the mortgage loan without the need to record any of the documents each time ownership changes. Entities must be members of MERS to participate. If a mortgage is sold or transferred from a participating MERS member to an entity that is not a member, an Assignment of Mortgage is prepared transferring the mortgage from MERS to the non-MERS entity.

A-1059-17T2

showing a complete chain of endorsement from the originator to the last endorser[, and] . . . an original assignment or assignments of [m]ortgage showing an unbroken chain of title from the originator to the [p]erson assigning to the Trustee (or to MER[S] . . .).

Plaintiff filed this complaint in April 2014, and then moved for summary judgment. Defendant opposed the motion and cross-moved for summary judgment. Judge Robert P. Contillo reserved decision and granted defendant permission to depose Sorell Elbert (Elbert), plaintiff's document custodian.

This deposition related to Elbert's "custodial functions" and not as a representative of the Trust. Exhibit E of Elbert's affidavit was a "screenshot maintained in the ordinary course of the [c]ustodian's business." She characterized this document by stating, "an exception was added as a result of the [c]ustodian not having possession of the original recorded [m]ortgage. The exception was removed on May 21, 2007. No other exceptions are noted. The absence of any other exception demonstrates the [c]ustodian's possession of the original [n]ote on September 20, 2005." As the "exception" was removed, the original mortgage, as opposed to a copy, was received by the Trustee.

Elbert also stated "the original [n]ote was endorsed in compliance with the governing [PSA]." She attached an undated Final Certification of the Trustee, stating that "it should have been executed within [forty-five] days of

4

the execution and delivery of the Initial Certification, pursuant to [s]ection 2.02 of the [PSA] for the Trust." She said, "I acknowledge that the final cert[ified] document itself, the letter, was not dated; but it should have been executed within the [forty-five] days of the initial cert[ification] being issued. And that's based on what the PSA requires."

Michael Ward (Ward) is an employee of Specialized Loan Servicing, LLC (SLS), plaintiff's servicer. He filed an affidavit in which he alleged that plaintiff possessed the note and mortgage. He then filed a supplemental affidavit to show ownership of defendant's loan.

The judge denied defendant's cross motion for summary judgment, granted plaintiff's motion, and entered the judgment under review.

I.

Section 2.01 of the PSA required the depositor to provide the Trustee with the original mortgage note endorsed by the originator, with a complete chain of endorsements from the payee to the Trustee. In the judge's order granting plaintiff's motion for summary judgment, he wrote,

> [d]efendant also challenges [p]laintiff's standing to foreclose in this matter by challenging the [PSA]. A borrower, however, lacks standing to challenge a PSA because he is not a party to the PSA, nor can he demonstrate that he is a third-party beneficiary of the PSA's terms. See Correia v. Deutsche Bank Nat'l Trust

5

<u>Co.</u>, 452 B.R. 319, 324 (1st Cir. B.A.P. 2011) ("[d]ebtors lack[] standing to challenge the mortgage's chain of title under the PSA"). Furthermore, there is no evidence that [d]efendant was an intended third-party beneficiary of the PSA. As such, the alleged deficiencies in the PSA are irrelevant to [p]laintiff's standing to bring this foreclosure action. Therefore, [p]laintiff has standing to bring this action.

Defendant is not a party to the PSA and he is not a beneficiary of its terms. We conclude therefore that he lacks standing to challenge the PSA.

II.

We reject defendant's contention that Elbert's and Ward's affidavits were insufficient to prove ownership and possession of the note. Rule 4:64-2(c)(2) states that "the affiant shall confirm . . . that the affidavit is made based on a personal review of business records of the plaintiff or the plaintiff's mortgage loan servicer, which records are maintained in the regular course of business[.]"

> If a motion is based on facts not appearing of record or not judicially noticeable, the court may hear it on affidavits made on personal knowledge, setting forth only facts which are admissible in evidence to which the affiant is competent to testify and which may have annexed thereto certified copies of all papers or parts thereof referred to therein.
>
> [<u>R.</u> 1:6-6.]

The business records exception under N.J.R.E. 803(c)(6) states:

A-1059-17T2

> A statement contained in a writing or other record of acts, events, conditions, and, subject to Rule 808, opinions or diagnoses, made at or near the time of observation by a person with actual knowledge or from information supplied by such a person, if the writing or other record was made in the regular course of business and it was the regular practice of that business to make it, unless the sources of information or the method, purpose or circumstances of preparation indicate that it is not trustworthy.

The "general acceptance of reliability will not attach if 'the trial court, after examining . . . [the records] and hearing the manner of their preparation explained, entertains serious doubt as to whether they are dependable or worthy of confidence.'" State v. Matulewicz, 101 N.J. 27, 30 (1985) (second alteration in original) (quoting Mahoney v. Minsky, 39 N.J. 208, 218 (1963)).

Rule 4:64-2(d) states:

> Plaintiff's counsel shall annex to every motion to enter judgment in a residential mortgage foreclosure action an affidavit of diligent inquiry stating: (1) that the attorney has communicated with an employee or employees of the plaintiff or of the plaintiff's mortgage loan servicer who (A) personally reviewed the affidavit of amount due and the original or true copy of the note, mortgage and recorded assignments, if any, being submitted and (B) confirmed their accuracy; (2) the date and mode of communication employed; (3) the name(s), title(s) and responsibilities in those titles of the plaintiff's employee(s) or the employee(s) of the plaintiff's mortgage loan servicer with whom the attorney communicated pursuant to this rule; and (4)

that the aforesaid documents comport with the requirements of [Rule] 1:4-8(a).

In his order granting summary judgment to plaintiff, the judge wrote:

> Here, Michael Ward, an employee of the loan servicer, swore to having access to [p]laintiff's business records, and to reviewing those records. Sorell Elbert, an employee of the [p]laintiff, swore to the same. Defendant has not offered any evidence of the falsity of Mr. Ward's or Ms. Elbert's affidavits, even after the court granted [d]efendant permission to depose Ms. Elbert. . . . Contrary to [d]efendant's opinion, and explained above, N.J.R.E. 803(c)(6)'s business records exception allows an individual to certify to the information found in certain business documents as the documents are held in the ordinary course of business and as long as that individual has reviewed those documents. That is the exact scenario here. Thus, Mr. Ward's and Ms. Elbert's affidavits are admissible.

N.J.R.E. 902(h) governs "self-authentication" and states that extrinsic evidence of authenticity as a condition precedent to admissibility is not necessary for "[d]ocuments accompanied by a certificate of acknowledgment executed in the manner provided by law by a notary public or other officer authorized by law to take acknowledgments." The same is true for certified copies of public records. See N.J.R.E. 902(d).

> To acknowledge a deed or other instrument made on behalf of a corporation or other entity, the maker shall appear before an officer specified in [N.J.S.A.] 46:14-6.1 and state that the maker was authorized to execute

8

the instrument on behalf of the entity and that the maker executed the instrument as the act of the entity.

[N.J.S.A. 46:14-2.1(a).]

Notary publics are "[o]fficers authorized to take acknowledgments" under N.J.S.A. 46:14-6.1. The plain language of N.J.R.E. 902(h) and N.J.S.A. 46:14-2.1(a) rebuts the allegation that extrinsic proof is necessary.

## III.

"The only material issues in a foreclosure proceeding are the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgaged premises." Great Falls Bank v. Pardo, 263 N.J. Super. 388, 394 (Ch. Div. 1993), aff'd, 273 N.J. Super. 542 (App. Div. 1994). "[E]ither possession of the note or an assignment of the mortgage that predated the original complaint confer[s] standing." Deutsche Bank Tr. Co. Ams. v. Angeles, 428 N.J. Super. 315, 318 (App. Div. 2012). If a plaintiff cannot establish that it owned or controlled the underlying debt at the time the complaint is filed, it "lacks standing . . . and the complaint must be dismissed." Wells Fargo Bank, N.A. v. Ford, 418 N.J. Super. 592, 597 (App. Div. 2011). "If a debt is evidenced by a negotiable instrument, such as the note executed by [a] defendant," whether a plaintiff has established ownership or control over the note "is governed by

Article III of the Uniform Commercial Code (UCC), N.J.S.A. 12A:3-101 to -605, in particular N.J.S.A. 12A:3-301." Ibid.

There are "three categories of persons entitled to enforce negotiable instruments" as described in N.J.S.A. 12A:3-301. Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J. Super. 214, 222-23 (App. Div. 2011). N.J.S.A. 12A:3-301 provides:

> "Person entitled to enforce" an instrument means the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument pursuant to [N.J.S.A.] 12A:3-309 or subsection d. of [N.J.S.A.] 12A:3-418. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

N.J.S.A. 46:9-9 states that,

> All mortgages on real estate in this State, and all covenants and stipulations therein contained, shall be assignable at law by writing, whether sealed or not, and any such assignment shall pass and convey the estate of the assignor in the mortgaged premises, and the assignee may sue thereon in his own name[.]

To show its status as an assignee, a plaintiff must "present[] an authenticated assignment indicating that it was assigned the note before it filed the original complaint." Mitchell, 422 N.J. Super. at 225.

10

N.J.S.A. 46:18-13(a) states that "[o]nly the established holder of a mortgage shall take action to foreclose a mortgage." An entity is the "established holder of a mortgage" if that entity is: (1) "the record holder of the mortgage as established by the latest record of assignment or by the original mortgage recording in the records of the county clerk or the register of deeds and mortgages, as appropriate to the county in which the mortgaged property is located"; or (2) "found to be the holder of the mortgage in a civil action joining as defendants the record holder of the mortgage, the mortgagor, and any other person known to have an interest in the mortgage." N.J.S.A. 46:18-13(b).

Here, plaintiff presented a Certification and Business Records from Elbert regarding the receipt of the Note, and produced the original note in court. Plaintiff claims that the loan was transferred on September 28, 2010, when MERS, as Nominee for Chevy Chase Bank, executed an Assignment of Mortgage to U.S. Bank, N.A., as Trustee relating to the Chevy Chase Funding, LLC, Mortgage-Backed Certificates, Series 2005-3. This Assignment of Mortgage was recorded in the Bergen County Clerk's Office on October 15, 2010. Thus, plaintiff claims that as of October 15, 2010, it had standing to bring a foreclosure action. Further, plaintiff argues that Elbert and Ward certified that plaintiff possessed the note before the Complaint was filed. It claims that Elbert

11

received and stored the original note on September 1, 2005. Thus, it also claims that it is the holder of the note under N.J.S.A. 12A:3-301. As both the record holder and as the party in physical possession of the note, we conclude that plaintiff had standing to file a foreclosure action against defendant.

IV.

Lastly, we turn to defendant's contention that the judge erred by granting plaintiff's motion for summary judgment. When reviewing an order granting summary judgment, we apply "the same standard governing the trial court . . . ." Oyola v. Xing Lan Liu, 431 N.J. Super. 493, 497 (App. Div. 2013). A court should grant summary judgment when the record reveals "no genuine issue as to any material fact" and "the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). We therefore consider the facts in a light most favorable to the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

Defendant alleges that he set forth a prima facie case of predatory lending under the New Jersey Consumer Fraud Act (NJCFA), N.J.S.A. 56:8-1 to -210. While there is no precise definition ascribed to the concept of "predatory lending," it has been described as

> a mismatch between the needs and capacity of the borrower. . . . In essence, the loan does not fit the

12

borrower, either because the borrower's underlying needs for the loan are not being met or the terms of the loan are so disadvantageous to that particular borrower that there is little likelihood that the borrower has the capability to repay the loan.

[Assocs. Home Equity Servs., Inc. v. Troup, 343 N.J. Super. 254, 267 (App. Div. 2001) (alteration in original).]

N.J.S.A. 56:8-2 states:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice[.]

To state a claim under the NJCFA, a plaintiff must allege (1) "unlawful conduct by defendant;" (2) "an ascertainable loss by plaintiff;" and (3) "a causal relationship between the unlawful conduct and the ascertainable loss." D'Agostino v. Maldonado, 216 N.J. 168, 184 (2013). We have previously explained that a negatively amortized adjustable rate mortgage loan is not a per se predatory loan. See Rosenberg v. Washington Mut. Bank, FA, 369 N.J. Super. 456, 465-66 (App. Div. 2004).

Here, the judge noted that while defendant had an annual income of $80,000 – not a monthly income of $40,000 as the loan application stated – defendant also had monthly expenses of $15,000 and made payments on the loan for over three years. Thus, the judge found no fraud in the execution of the loan. In his certification, defendant stated, "I fell behind on my mortgage payment because of a decline in the economy and loss of customers for my consulting business." Defendant also supplemented his income on the loan application with a letter from his CPA explaining that if defendant "uses funds from the business for the new purchase . . . it will not adversely effect his business." "[P]ublic policy does not impose upon the Bank absolute liability for the hardships which may befall the business venture it finances." See, e.g., Globe Motor Car Co. v. First Fid. Bank, N.A., 273 N.J. Super. 388, 394 (Law Div. 1993); see also Pereira v. United Jersey Bank, N.A., 201 B.R. 644, 670 (S.D.N.Y. 1996).

Defendant claims that he is not fluent in English. But at his deposition, defendant spoke and read English without an interpreter. Further, as the judge explained, defendant received and signed copies of a Truth in Lending Disclosure Statement, an Adjustable Rate Mortgage Disclosure, and a Consumer Handbook on Adjustable Rate Mortgages, which were all in English. Defendant

also had legal representation throughout the loan transaction and admitted to willfully disregarding documents related to the loan.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1059-17T2