**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0475-23

VICTOR ASSOCIATES, LP,

    Plaintiff-Respondent,

v.

RICHARD CARTER,

    Defendant-Appellant.

_____

> Submitted May 14, 2025 – Decided July 15, 2025
>
> Before Judges Paganelli and Torregrossa-O'Connor.
>
> On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. LT-000887-23.
>
> Richard Carter, appellant pro se.
>
> Sirlin Lesser & Benson, PC, attorneys for respondent (Adam Nachmani, of counsel and on the brief).

PER CURIAM

In this residential landlord-tenant action, defendant Richard Carter appeals the June 15, 2023 judgment of possession entered against him and in

favor of plaintiff Victor Associates, LP. He also appeals subsequent orders denying applications to vacate, stay, and reconsider the judgment of possession. Because defendant is no longer in possession of the apartment, we dismiss this appeal as moot.

I.

Defendant originally leased from plaintiff an apartment for a term ending in August 2021. Although plaintiff notified defendant to cease certain harassing conduct toward other tenants, plaintiff thereafter entered into a second lease agreement for the same rental unit extending the lease period through September 30, 2023. The agreement required a $1,391 monthly rental payment due on the first of every month.

The lease agreement also (1) identified as "additional rent" damage to the apartment, making defendant liable for such costs; (2) prohibited defendant from "behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including [plaintiff's] agents and employees) in or near the apartment community; stalking, following other occupants, employees and/or guests; [and] disrupting [plaintiff's] business operations"; (3) allowed plaintiff access to defendant's apartment in certain circumstances and deemed defendant in breach of the lease for denying access;

and (4) indicated that defendant could be held in default upon violation of any of the terms of the agreement, such as the failure to pay rent or the violation of apartment rules.

Addendums to the lease, all signed by defendant, included an agreement that defendant would pay "attorney's fees and costs as additional rent" if plaintiff retained an attorney to send a "legal notice," and a "community policies and procedures addendum," providing that "[s]hout[s], threats, use of obscenities, personally disparaging remarks, violence, coercion and/or intimidation against anyone in this community . . . shall be grounds for lease termination." The latter addendum also designated quiet hours as between 10:00 p.m. and 8:00 a.m., requiring residents to "exercise special caution about noise" and prohibiting "loud activities," including "loud music and television" and "loud household activities," or risk lease termination.

Plaintiff subsequently sent defendant various notices to cease prohibited behavior, including: verbal altercations with other residents, "cornering" maintenance personnel in hallways, calling them after hours and "sending excessive and unnecessary daily emails," recording others without consent, causing $1,043.40 in damage to a countertop in the apartment and refusing entry to make necessary repairs, causing loud noise during nighttime hours,

3

threatening plaintiff's contractor with legal action, and refusing city code inspectors entry into the apartment, allegedly resulting in legal action against plaintiff for noncompliance.

Plaintiff initially filed an eviction action against defendant on March 17, 2022, which the court eventually dismissed after plaintiff failed to appear for trial. On the day the complaint was dismissed, plaintiff sent defendant another letter titled "rental default; notice to quit," citing specific examples of defendant's ongoing harassing behavior toward tenants and staff.

Plaintiff filed a second complaint seeking defendant's eviction due to nonpayment of rent and "other reasons," as outlined in its numerous prior notices alleging violations of the lease, which plaintiff appended to its complaint. Plaintiff listed in its certification that defendant owed $1,745.40 in rent, but that defendant's rental obligation may rise as the action persisted and defendant's tenancy endured. Plaintiff enumerated specific instances of defendant's improper conduct, ranging from threatening and harassing residents to damaging property.

On June 15, 2023, defendant failed to appear for trial, and the court therefore entered a judgment for possession by default in favor of plaintiff, and accepted plaintiff's proofs showing defendant then owed unpaid rent in the

amount of $3,251.  The court subsequently issued a warrant for removal against defendant.

After the warrant for removal was executed on July 13, defendant filed an order to show cause (OTSC) on that same day seeking an "[e]mergency [h]ardship" stay from the execution of the warrant, initially representing he paid all rent due to plaintiff.  He further contended the matter was removed from Superior Court to a "Court of Indian Offenses," as evidenced by an "International Autochthonous Order," and that the warrant for removal was unsigned and therefore illegal, both invalidating his removal.

The court confirmed the matter had not been removed, but by July 14 order granted defendant re-entry and a brief stay pending argument of the OTSC. Plaintiff filed opposition, asserting that defendant remained in breach of numerous sections of the lease and failed to appear for both a May 2023 case management conference and the June 2023 trial.

On July 21, 2023, the court held a hearing, and defendant argued he "was illegally locked out" and "someone forged a signature" of the sheriff's department on the warrant for removal, invalidating the eviction.  Defendant again contended the matter was removed from the court's jurisdiction and claimed his lease did not use his "registered name in Minnesota," and that "he

do[es not] really have the contract with [plaintiff]." He claimed he feared for his safety while in the building after learning of a "dead body" on the third floor, and three days later he "received a letter [that he] need[ed] to leave the premises." Defendant then asserted he had "foreign sovereign[] immunity," citing an entity called the "Moundbuilders," and argued he never received any court document through certified mail about appearing for the trial date.

The court denied defendant's application on July 21, 2023, finding it had jurisdiction over this action that was never removed to another court. It found that default was properly entered, as defendant did not attend either the scheduled case management conference or trial despite proper notice, and nonetheless defendant "ha[d] shown no good cause to in any way vacate the default judgment or otherwise grant additional time" to stay the execution of the warrant for removal. The court expressed, "[t]o the extent—[it was] following [defendant's arguments], . . . . everything [he was] now raising" was "appropriate for . . . trial," but "the trial was held, and [defendant] did[ not] appear, so [plaintiff] took a default against [him]." The court noted defendant was "very professional" and "respectful" to the court but concluded "there [wa]s no basis whatsoever to grant the relief."

Defendant filed another OTSC on August 11, 2023, under Rule 4:50-1

seeking a hardship stay. Defendant again sought to vacate the judgment for possession under Rule 4:50-1, citing hardship as he had no housing alternatives. He also indicated he could show evidence of plaintiff's "misconduct."

The court entered an order on August 14 denying defendant's motion, noting defendant filed the motion "well after the . . . allowable period after a lockout, and[ the application] evidence[d] no inclination on the part of . . . [defendant] to pay all the rent and proper costs, ev[e]n if such an alternative was available," as required for the court to grant a hardship stay. The court then identified defendant's argument "of misconduct on the part of the landlord," but again denied that claim, finding it was already addressed in the earlier OTSC. It found that defendant's previous arguments at the OTSC hearing, including a lack of jurisdiction and sovereign immunity, lacked merit.

Defendant moved for reconsideration, and, at that hearing, the court acknowledged it reviewed the application but found "nothing in [defendant's] motion . . . warrant[ed] reconsideration" and the "matter ha[d] been addressed adequately by the [c]ourt." Accordingly, by order dated August 31, 2023, the court denied defendant's motion.

II.

Defendant now appeals the court's orders dated June 15, 2023, July 14,

A-0475-23

2023, July 21, 2023, August 14, 2023, and August 31, 2023. He argues for the first time: (1) the court deprived him of due process; (2) his eviction was illegal as he was protected under the Anti-Eviction Act, N.J.S.A. 2A:18-61.1 to -61.12; and (3) plaintiff violated the local rent-control ordinance. Defendant asks this court to vacate the judgment of possession, dismiss plaintiff's complaint for lack of proper notice, or, in the alternative, remand the matter and direct the court to consider providing defendant with reasonable accommodations.

Plaintiff counters that defendant's appeal is moot as he "no longer resides in the apartment" and has not offered evidence that his eviction "had or has potentially adverse legal consequences." Plaintiff alternatively argues defendant's claims on appeal were either not raised below, and thus are inappropriate for appellate review, or lack merit.

We review the validity of a judgment of possession for abuse of discretion. See Cmty. Realty Mgmt. v. Harris, 155 N.J. 212, 236 (1998). "In reviewing a trial court's conclusions in a nonjury civil action, [this court] is bound to grant substantial deference to the trial court's findings and conclusions." Fromet Props., Inc. v. Buel, 294 N.J. Super. 601, 615 (App. Div. 1996) (citing Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 483-84 (1974)). Reviewing courts leave undisturbed factual findings supported by substantial,

credible evidence. See Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017). Conversely, this court reviews de novo the trial court's legal conclusions. See Clark v. Nenna, 465 N.J. Super. 505, 511 (App. Div. 2020). We first address plaintiff's mootness argument.

"Mootness is a threshold justiciability determination rooted in the notion that judicial power is to be exercised only when a party is immediately threatened with harm." Stop & Shop Supermarket, LLC v. Cnty. of Bergen, 450 N.J. Super. 286, 291 (App. Div. 2017) (quoting Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010)). "An issue is 'moot when our decision sought in a matter, when rendered, can have no practical effect on the existing controversy.'" Redd v. Bowman, 223 N.J. 87, 104 (2015) (quoting Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J. Super. 214, 221-22 (App. Div. 2011)). Appellate courts do not decide issues deemed moot unless "the underlying issue is one of substantial importance, likely to reoccur but capable of evading review." Wisniewski v. Murphy, 454 N.J. Super. 508, 519 (App. Div. 2018) (quoting Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 330 (1996)).

Importantly, in landlord-tenant actions, "where a tenant no longer resides in the property, an appeal challenging the propriety of an eviction is moot." Sudersan v. Royal, 386 N.J. Super. 246, 251 (App. Div. 2005); see also Daoud

v. Mohammad, 402 N.J. Super. 57, 61 (App. Div. 2008) (holding that "[b]ecause the [Special Civil Part]'s jurisdiction is limited to determining the issue of the landlord's right to possession of the premises, and . . . the tenant vacated the premises," dismissal of the appeal was appropriate due to mootness).  However, when an "eviction carries residual legal consequences potentially adverse to" a former occupant, courts may entertain compelling landlord-tenant matters that are otherwise moot.  Sudersan, 386 N.J. Super. at 251.

It is undisputed that defendant vacated the apartment upon execution of the warrant for removal; thus, his challenges to the court's orders contesting the eviction or seeking a stay are moot.  We recognize defendant now argues that the eviction was illegal under various statutory provisions; however, as defendant did not raise these claims before the trial court, we decline to address them here.  See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) ("It is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available . . . .").

Appeal dismissed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hasley

Clerk of the Appellate Division

10

A-0475-23