**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5423-18
                          A-0007-19

BANK OF AMERICA,
NATIONAL ASSOCIATION,

     Plaintiff-Respondent,

v.

R.H. SURGENT, LLC, JOHN
W. SURGENT, and REGINA
SURGENT,

     Defendants-Respondents,

and

STEVEN L. KESSLER, d/b/a
LAW OFFICES OF STEVEN L.
KESSLER,

     Defendant-Appellant,

and

JP MORGAN CHASE BANK,
N.A., MONOGRAM CREDIT
CARD BANK OF GEORGIA,
LEXISNEXIS, and UNITED
STATES OF AMERICA,

Defendants,

and

STEVEN L. KESSLER, d/b/a
LAW OFFICES OF STEVEN
L. KESSLER,

      Defendant/Third-Party
      Plaintiff-Appellant,

v.

BANK OF AMERICA,
NATIONAL ASSOCIATION,
R.H. SURGENT, LLC, JOHN
W. SURGENT, and REGINA
SURGENT,

      Defendants/Third-Party
      Defendants-Respondents.
_____

BANK OF AMERICA,
NATIONAL ASSOCIATION,

      Plaintiff-Respondent,

v.

R.H. SURGENT, LLC, JOHN
W. SURGENT, and REGINA
SURGENT,

      Defendants-Appellants,

and

2

STEVEN L. KESSLER, d/b/a
LAW OFFICES OF STEVEN L.
KESSLER,

      Defendant-Respondent,

and

JP MORGAN CHASE BANK,
N.A., MONOGRAM CREDIT
CARD BANK OF GEORGIA,
LEXISNEXIS, and UNITED
STATES OF AMERICA,

      Defendants,

and

STEVEN L. KESSLER, d/b/a
LAW OFFICES OF STEVEN
L. KESSLER,

      Defendant/Third-Party
      Plaintiff-Respondent,

v.

BANK OF AMERICA,
NATIONAL ASSOCIATION,

      Defendant/Third-Party
      Defendant-Respondent,

and

R.H. SURGENT, LLC, JOHN
W. SURGENT, and REGINA

SURGENT,

   Defendants/Third-Party
   Defendants-Appellants.

_____

Argued on June 9, 2022 – Decided August 31, 2022

Before Judges Hoffman, Geiger, and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. F-009209-17.

Nicholas A. Duston argued the cause for appellant Steven L. Kessler in A-5423-18 (Norris McLaughlin, PA, attorneys; Nicholas A. Duston, of counsel and on the briefs).

John Vincent Saykanic argued the cause for appellants John W. Surgent and R.H. Surgent, LLC in A-0007-19.

Nicholas A. Duston argued the cause for respondent Steven L. Kessler in A-0007-19 (Norris McLaughlin, PA, attorneys; Nicholas A. Duston, of counsel and on the brief).

Daniel JT McKenna and Bethany A. Abele argued the cause for respondent Bank of America, National Association (Ballard Spahr LLP, and Riker Danzig Scherer Hyland & Perretti LLP, attorneys; Daniel JT McKenna, William Patrick Reiley, Michael R. O'Donnell, Bethany A. Abele, and Michael P. Crowley, on the briefs).

John Vincent Saykanic, attorney for respondents John W. Surgent and R.H. Surgent, LLC, in A-5423-18, join

4                                                          A-5423-18

in the briefs of appellant Steven L. Kessler and respondent Steven L. Kessler in A-0007-19.

PER CURIAM

These two appeals concern a mortgage foreclosure action involving a single-family residential property securing a $1.75 million loan. No payments have been made on the loan for over sixteen years – since February 1, 2006. By order dated July 3, 2018, the trial court granted summary judgment to plaintiff, Bank of America, N.A. (plaintiff or BOA), determining that plaintiff had established its prima facie right to foreclose, and that all affirmative defenses and counterclaims asserted by defendants – R.H. Surgent, LLC, (the LLC), John W. Surgent (John), Regina Surgent (Regina), and Steven L. Kessler, doing business as the Law Office of Steven L. Kessler (Kessler) – were non-germane and legally deficient. We calendared the appeals back-to-back and now consolidate them for disposition in this opinion. We affirm.

I.

We discern the following facts from the record. Regina and John married in 1982. John controlled the couple's finances, and Regina did whatever he said regarding bills and expenses. On December 29, 1988, Regina purchased for $1.35 million the residential property in Franklin Lakes known as Block 1110-A, Lot 12 on the Franklin Lakes tax map (the Property or the Franklin Lakes

5

property).  On July 3, 1995, Regina deeded the Property to John.  While John held title to the Property, he used it as collateral for a $600,000 commercial loan from Hudson City Savings Bank (Hudson).  United States v. Surgent, No. 04-cr-364, 2009 WL 2525137, at *26 (E.D.N.Y. Aug. 17, 2009), abrogated on other grounds by United States v. Awad, 598 F.3d 76, 79 (2d Cir. 2010), abrogation recognized by United States v. Peralta, 778 F. App'x 45, 46 (2d Cir. 2019).

Less than two weeks later, on July 14, 1995, John deeded the Property back to Regina, but the transfer was not recorded until July 1, 1996.  During this delay in October 1995, Midatlantic Bank (Midatlantic) issued a $215,000 line of credit secured by the Property.

On September 7, 1999, Regina transferred the Property for $100 to the LLC, a Nevada Limited Liability Company created in August 1999.  Regina stated she transferred the Property for estate planning purposes, but John said the purpose of the transfer was "asset protection" in case he got "jammed up."

The LLC's Articles of Organization were filed with the State of Nevada's Office of the Secretary of State on August 16, 1999.  Those documents identified Regina as the LLC's manager and executing organizer and stated that the LLC "shall be managed by [the] Manager(s)."  No other managers or members of the

A-5423-18

LLC were identified in the documents, and the LLC's address was listed as the same one in Florida used by Regina.

Regina and John were divorced by April 2018. On January 10, 2000, the Merrill Lynch Credit Corporation (Merrill Lynch) issued a $1.75 million loan to John on his own behalf and on behalf of the LLC, payable on March 1, 2026, with an initial interest rate of 8.5 percent per annum interest and a 5 percent fee for late payments. To secure payment of the loan, on that same day: 1) John, individually as "Borrower," and as "Manager" on behalf of the LLC, executed an adjustable rate note, an adjustable rate/index conversion option rider, a construction loan rider, and a construction loan agreement and addendum; and 2) John, as "Manager" on behalf of the LLC, executed a non-purchase money mortgage granting Merrill Lynch "and/or its assigns" a first priority lien on the Property. On January 14, 2000, Merrill Lynch recorded the mortgage.

The note stated:

> If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. . . . The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

7

To establish his authority to sign the loan documents on behalf of the LLC, John provided Merrill Lynch with the following corporate documents signed by John and Regina: (1) a consent of LLC "members" John and Regina, approving, authorizing and directing John "to execute" all documents "to complete and effectuate the refinance of [the Property] with [Merrill Lynch] for $1,750,000.00 and the mortgaging of [the Property] to [Merrill Lynch]"; (2) minutes of a special LLC meeting during which Regina resigned as managing officer and John was appointed to fill the position; and (3) a manager's certificate showing both John and Regina as the LLC's managers and signed by John as "Manager/Organizer".[1]

Thereafter, the loan proceeds were used to pay off the Hudson loan, the Midatlantic line of credit, and other debts.[2] Proceeds were also used to renovate and expand the Property, resulting in a house with seven bedrooms, eight bathrooms, five fireplaces, a theater, a gym, and a wine cellar. During the almost

---

[1]  On appeal, unlike before the trial court, defendants do not raise any issues challenging John's authority to sign the loan documents on behalf of the LLC.

[2]  PNC merged with Midatlantic in 1999. See https://www.pnc.com/en/about-pnc/company-profile/legacy-project/corporate-history.html (last visited August. 29, 2022).

two-year construction, which began in 1999, Regina lived in the home or in Florida.

On October 31, 2000, John and the LLC signed an amendment to the note, mortgage, and rider. On November 10, 2000, they also agreed to a note modification, which modified dates and payment methods and changed the maturity date to November 2025. At that time, $1.75 million remained the unpaid principal balance. John signed the document both individually and on behalf of the LLC, and Merrill Lynch recorded the amendment on December 13, 2000. One of the provisions stated in part: "If the spouse of the Borrower . . . is not obligated on the Note . . . said spouse shall not be personally obligated to any [sic] the sums owed under the terms of the Note and this Agreement."

On September 7, 2001, Merrill Lynch assigned the mortgage to Cendant Mortgage Corporation (Cendant). On March 19, 2007, Cendant's successor, PHH Mortgage Corporation (PHH), assigned the mortgage back to Merrill Lynch. Effective July 1, 2011, Merrill Lynch merged into BOA.

Meanwhile, on November 15, 2000, both Regina and John, on behalf of himself and as manager of the LLC, executed a separate home equity line of

credit for $500,000 with Summit Bank.[3] John filed for bankruptcy in 2002. On April 15, 2004, the United States filed a federal indictment against John, charging him with securities fraud, conspiracy to commit securities fraud, and conspiracy to launder money. In a superseding indictment, the United States declared that, upon John's conviction, it would seek forfeiture of all property involved in his crimes, including the Franklin Lakes property.

A jury found John guilty of all counts in July 2005, and he was sentenced to a concurrent prison term of fourteen years. He was also ordered to pay restitution of approximately $2 million. See United States v. Surgent, 278 F. App'x 32, 33 (2d Cir. 2008) (upholding denial of new trial).

In August 2005, the United States filed a federal criminal forfeiture action against John, pursuant to 21 U.S.C. § 853, seeking a money judgment and the forfeiture of "substitute property" under 21 U.S.C. § 853(p)(2). In its proposed preliminary forfeiture order, the "substitute property" included, among other assets, "all right, title, and interest in [the Franklin Lakes property]."

In June 2006, Kessler represented Regina and filed a petition on her behalf, pursuant to 21 U.S.C. § 853(n), asserting her third-party rights and

---

[3] Plaintiff ultimately acquired Summit Bank and then charged off this debt in September 2012.

interest in the Property. Regina claimed that she was "a co-obligor, individually and/or as principal of [the LLC] on the mortgages."

After several failed settlement attempts, the federal district court granted a motion by the United States to amend its preliminary order to exclude the Property in the final forfeiture order. In fact, in its 2009 written decision for the final order of forfeiture, the district court concluded that the United States had failed to demonstrate, as a matter of law, that John had any interest in the Property or the LLC and that Regina, individually or through her sole ownership of the LLC, held a 100 percent interest in the Property, which then could not be forfeited to the United States.

Meanwhile, during the federal forfeiture action, the district court approved a consent order in April 2008, memorializing an agreement between the United States and plaintiff, wherein the United States acknowledged the validity of the subject mortgage and Merrill Lynch's and BOA's priority. The consent order further provided that Merrill Lynch "and/or" BOA could proceed with their pending foreclosure action on the Property.

Following John's conviction, an accountant working for John and Regina paid the mortgage loan; in addition, Regina made the payments after John's incarceration. The loan went into default for non-payment on February 1, 2006.

On February 16, 2007, Merrill Lynch filed a foreclosure complaint in the Chancery Division, naming as defendants John, the LLC, Regina, and other third-party judgment creditors. Kessler was not named in this action.

In March 2012, the trial court granted a motion to substitute BOA for Merrill Lynch. In January 2017, the court dismissed the foreclosure action without prejudice for lack of prosecution. See R. 4:64-8(a).

John was released from prison in 2017 and began residing at the Property. In February 2017, PHH, as loan servicer for plaintiff, sent John and the LLC notices of plaintiff's intention to foreclose and declaring that the total delinquency and reinstatement amount, as of February 14, 2017, was $1,882,292.88, including late fees of $7,757.46.

On April 13, 2017, Merrill Lynch filed the subject residential mortgage foreclosure complaint against John, the LLC, and various judgment creditors and lienholders that might affect the Property. One of those creditors was Kessler, who had obtained a New York judgment against Regina on September 15, 2016, for unpaid legal fees of $622,068.71, plus costs and interest, stemming from his representation of Regina in the federal action. Kessler domesticated the judgment in New Jersey in December 2016, pursuant to N.J.S.A. 2A:49A-27.

In its complaint, Merrill Lynch stated, "Plaintiff is the holder of the Note," and "the note and mortgage" executed by John and the LLC to [Merrill Lynch] had been reassigned: 1) [Merrill Lynch] executed "an assignment of mortgage" to Cendant in September 2001, recorded in October 2001; and 2) PHH, f/k/a Cendant, executed "an assignment of mortgage" back to [Merrill Lynch] in March 2007, recorded in April 2007. The complaint further stated that the mortgage had been modified by a mortgage modification agreement between [Merrill Lynch], the LLC and John, which was recorded in December 2000, and that "[Merrill Lynch] is the servicer for this provider." However, other than in the caption naming Merrill Lynch as plaintiff, the complaint did not identify the name of "plaintiff," and the complaint did not identify the name of the "provider" that Merrill Lynch was servicing.

Kessler filed an answer with affirmative defenses, a counterclaim against Merrill Lynch, crossclaims against the LLC and John, and a third-party complaint against Regina. Merrill Lynch filed an answer to Kessler's counterclaim, and Regina answered Kessler's third party complaint.

On January 16, 2018, Merrill Lynch amended its complaint to substitute BOA as plaintiff, to add Regina individually as a named defendant, and to add an equitable mortgage claim against all parties who had benefited from the use

of the loan proceeds. The amended complaint also stated, "Plaintiff is the successor in interest by merger to [Merrill Lynch]" which "is the holder of the Note and Mortgage." The allegation that Merrill Lynch was a "servicer" was deleted from the amended complaint.

Regina, individually and on behalf of the LLC, filed an answer with affirmative defenses to the amended complaint and added separate defenses to Kessler's third-party complaint. John filed his answer with affirmative defenses after the court lifted the default that had been filed against him for not answering the initial complaint. Kessler also filed an answer to the amended complaint.

In May 2018, plaintiff moved for summary judgment and to strike the contesting answers of John, Regina, and the LLC, and all of Kessler's pleadings. On July 3, 2018, the court granted plaintiff's motion with prejudice. The court then ordered the action returned to the Foreclosure Unit for processing as an uncontested foreclosure.

In its written decision dated June 29, 2018, the trial court initially noted that "the only material issues in a foreclosure proceeding are the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to foreclose on the mortgaged property." The court also found that "[s]ince the

14

execution, and non-payment of the mortgage was conceded, prima facie right to foreclose was made out."

Accordingly, the trial court held that plaintiff had established its prima facie right to foreclose on the Property and demonstrated proof of the execution of the mortgage, the recording of the lien, and the non-payment of the mortgage. Plaintiff also certified to the court's satisfaction that it was in possession of the original note and loan documents.

The court then found: 1) the transfer of the Property from Regina to the LLC was not fraudulent; 2) the mortgage held by the Bank was valid; 3) plaintiff's failure to file a petition in the federal forfeiture proceeding was irrelevant; 4) laches does not bar the instant foreclosure action; and 5) plaintiff established its prima facie right to foreclose. The court explained that Regina's arguments were "meritless and insufficient to defeat summary judgment [and] John Surgent and Steven Kessler both lack[ed] standing to challenge the foreclosure, and, even if standing were conferred, their arguments [were] meritless." The court also concluded that the various affirmative defenses raised by John were meritless and lacked all actual and legal support. Thus, finding that defendants' contesting answers had failed to challenge any of the essential elements of the foreclosure action, the court granted plaintiff's motion for

summary judgment, struck defendants' answers, and remitted the matter to the Office of Foreclosure as uncontested for the issuance of a final judgment, declaring that no further discovery was required. The court also denied, without prejudice, plaintiff's motion for a protective order as moot.

In April 2019, pursuant to Rule 4:64-9, John filed a motion objecting to calculation of the amount due, so the action was administratively transferred back to the court in Bergen County. The court overruled John's objection in a written decision and order on May 28, 2019.

On July 1, 2019, the court issued a final judgment of foreclosure, ordering that the Bank was entitled to $2,595,236.19, together with interest from November 20, 2018, and costs of suit, including counsel fees of $7,500. The judgment ordered the sale of the Property and also barred and foreclosed defendants from all equity of redemption. Attached to the final judgment was a writ of execution ordering the Sheriff to sell the Property and return any surplus to the court.

On appeal, John and the LLC argue the trial court erred by finding that John lacked standing to challenge the foreclosure and the mortgage's validity, by finding that plaintiff's suit was not barred by the statute of limitations and the doctrine of laches, by finding that plaintiff had standing to foreclose, and by

16

granting summary judgment notwithstanding insufficient discovery and genuine issues of various material facts. Kessler argues the court erred by finding that he lacked standing to challenge the foreclosure, by dismissing his affirmative claims with prejudice, and by granting plaintiff's motion for summary judgment.

While we conclude the trial court erred by determining that John lacked standing to contest the validity of the mortgage and foreclosure,[4] this error does not warrant reversal because the judge went on to address all remaining claims and defendants have failed to advance a meritorious claim of judicial error to the court's grant of plaintiff's motion for summary judgment.

Below we address the remaining claims of John and the LLC in turn, and then the claims of Kessler.

---

[4] We are satisfied that John has standing to challenge the foreclosure because he signed the underlying debt on behalf of himself, i.e., he executed the note individually, and according to that document, he was "fully and personally obligated to keep all of the promises made" and the note holder may enforce its rights against him, individually, or against him and the LLC, together. Under New Jersey statutory law, "a creditor who forecloses upon the mortgage of a debtor may bring a deficiency action against that debtor if the foreclosure action does not generate sufficient funds to satisfy the debt, including interest and costs." W. Pleasant-CPGT, Inc. v. U.S. Home Corp., 243 N.J. 92, 94 (2020) (citing N.J.S.A. 2A:50-2). Therefore, "[i]t is clear that even a party who has no title interest in the subject property is a proper party in a foreclosure action, and a necessary party if there is any intention to pursue a deficiency judgment against that party." River Edge Sav. & Loan Ass'n v. Clubhouse Assocs., Inc., 178 N.J. Super. 177, 184 (App. Div. 1981) (citing Pilgrim Bldg. & Loan Ass'n v. McGuinness, 117 N.J. Eq. 438, 439-40 (E. & A. 1935)).

II.  Claims Asserted by John and the LLC

A.  Statute of Limitations

Defendants contend for the first time on appeal that the trial court erred by finding the current statute of limitations, N.J.S.A. 2A:50-56.1, did not preclude summary judgment or mandate dismissal of the complaint with prejudice.[5]  This claim lacks merit.

Generally, an appellate court "'will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available' unless the matter involves the trial court's jurisdiction or is of public importance."  Alloway v. Gen. Marine Indus., LP, 149 N.J. 620, 643 (1997) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)).  Accord Selective Ins. Co. of Am. v. Rothman, 208 N.J. 580, 586 (2012).  Nevertheless, addressing the merits, we reject defendants' argument.

Whether a cause of action is barred by a statute of limitations is a legal question subject to de novo review.  Save Camden Pub. Schs. v. Camden City

_____

[5]  Although defendants raised a statute-of-limitations argument as their ninth affirmative defense, they alleged below only that plaintiff's claims were barred because a statute of limitations cannot be extended by dismissing prior litigation and then starting new litigation on the same subject matter.  They never argued, as they do here, the retroactivity of a new statutory amendment to the time limits.

Bd. of Educ., 454 N.J. Super. 478, 487 (App. Div. 2018); Catena v. Raytheon Co., 447 N.J. Super. 43, 52 (App. Div. 2016).

The execution date of the mortgage was January 10, 2000, and it was recorded on January 14, 2000. A subsequent mortgage modification amended the maturity date to 2025. The date of default was February 1, 2006. The date plaintiff initiated its current foreclosure action was April 13, 2017.[6]

Effective August 6, 2009, N.J.S.A. 2A:50-56.1 provided the statute of limitations for residential mortgage foreclosures and stated:

> An action to foreclose a residential mortgage shall not be commenced following the earliest of:
>
> a. Six years from the date fixed for the making of the last payment or the maturity date set forth in the mortgage or the note, bond, or other obligation secured by the mortgage . . . ;
>
> b. Thirty-six years from the date of recording of the mortgage . . . ; or
>
> c. Twenty years from the date on which the debtor defaulted, which default has not been cured . . . .
>
> [L. 2009, c. 105, § 1.]

---

[6] A prior state foreclosure action was filed on February 16, 2007, and dismissed without prejudice in January 2017. A dismissal without prejudice adjudicates nothing, and does not itself constitute a bar to reinstitution of the action, subject to constraints of the statute of limitations. Woodward-Clyde Consultants v. Chem. & Pollution Scis., Inc., 105 N.J. 464, 472 (1987).

Applying the 2009 version, plaintiff's action was properly filed before twenty years from the default date (the earliest date), or before February 2026. N.J.S.A. 2A:50-56.1(c) (2009).

On July 3, 2018, the court issued its order granting plaintiff's motion for summary judgment with prejudice and striking defendants' answers, affirmative defenses and counterclaims. On July 1, 2019, the court entered its final judgment of foreclosure. However, between those two dates, on April 29, 2019, the Legislature amended N.J.S.A. 2A:50-56.1(c) from twenty years to six years from the date on which the debtor defaulted in situations, such as this action, in which the date of default is used as the method to determine when the statute of limitations has expired. L. 2019, c. 67, § 1.

N.J.S.A. 2A:50-56.1(c) (emphasis added) now states:

> An action to foreclose a residential mortgage shall not be commenced following the earliest of:
>
>    . . . .
>
> c. <u>Six years</u> from the date on which the debtor defaulted, which default has not been cured, as to any of the obligations or covenants contained in the mortgage or in the note, bond, or other obligation secured by the mortgage, except that if the date to perform any of the obligations or covenants has been extended by a written instrument or payment on account has been made, the action to foreclose shall not be commenced after <u>six years</u> from the date on which

the default or payment on account thereof occurred under the terms of the written instrument.

Defendants argue that the six-year amendment to N.J.S.A. 2A:50-56.1(c) (2019) applies retroactively and renders plaintiff's foreclosure action as time-barred.[7] We disagree. When the Legislature enacted its 2019 amendment to N.J.S.A. 2A:50-56.1(c), it also declared: "This act shall take effect immediately and apply to residential mortgages <u>executed on or after</u> the effective date [of April 29, 2019]." <u>L.</u> 2019, <u>c.</u> 67, § 2 (emphasis added).

"In determining whether a statute applies retroactively, a court's analysis will focus on 'whether the Legislature intended to give the statute retroactive application.'" <u>Pisack v. B & C Towing, Inc.</u>, 240 N.J. 360, 370 (2020) (quoting <u>James v. N.J. Mfrs. Ins. Co.</u>, 216 N.J. 552, 563 (2014)) (internal citation omitted). Our "courts are not free to disregard legislative intent." <u>Phillips v. Curiale</u>, 128 N.J. 608, 615 (1992). The words used by the Legislature in <u>L.</u> 2019, <u>c.</u> 67, § 2, "bespeak an intent contrary to, and not supportive of, retroactive application." <u>Cruz v. Cent. Jersey Landscaping, Inc.</u>, 195 N.J. 33, 48 (2008). Thus, the 2019 amendment to N.J.S.A. 2A:50-56.1(a) does not apply to bar plaintiff's foreclosure action because the mortgage was executed in 2000.

_____

[7] If the 2019 version applied, plaintiff's action had to be filed before six years from the default date, or before February 2012. N.J.S.A. 2A:50-56.1(c) (2019).

The role of an appellate court "in statutory interpretation 'is to determine and effectuate the Legislature's intent.'" Marino v. Marino, 200 N.J. 315, 329 (2009) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553 (2009)). "[G]enerally, the best indicator of that intent is the statutory language." MasTec Renewables Constr. Co. v. Sunlight Gen. Mercer Solar, LLC, 462 N.J. Super. 297, 318 (App. Div. 2020) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)), certif. denied, 244 N.J. 243 (2020).

Defendants' retroactivity argument clearly lacks merit as plaintiff's foreclosure action was not time barred by N.J.S.A. 2A:50-56.1(c) (2009).

### B. Laches

Defendants next contend the trial court erred by not finding that plaintiff's foreclosure action was barred by application of the doctrine of laches. This argument lacks merit as we discern no error or abuse of discretion.

Laches is an equitable doctrine that operates as an affirmative defense precluding relief when there is an "unexplainable and inexcusable delay" in exercising a right. Fox v. Millman, 210 N.J. 401 (2012) (quoting Cnty. of Morris v. Fauver, 153 N.J. 80, 105 (1998)). Laches is "invoked to deny a party enforcement of a known right when the party engages in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party."

Knorr v. Smeal, 178 N.J. 169, 180-81 (2003). Whether to apply laches "depends on the facts of the particular case and is a matter within the sound discretion of the trial court." Mancini v. Twp. of Teaneck, 179 N.J. 425, 436 (2004) (quoting Garrett v. Gen. Motors Corp., 844 F.2d 559, 562 (8th Cir. 1988)).

In rejecting defendants' claim that plaintiff's foreclosure action should be barred by the doctrine of laches, the trial court noted that "laches is rarely applied where a cause of action is governed by a statute of limitations." Quoting Fox, 210 N.J. at 422-23, the court stated that applying laches in contravention of a statute of limitations "would replace the regular and predictable time limits fixed by our Legislature through the statutes of limitations with a system in which no lawyer or litigant could be confident of the time that would govern the initiation of litigation."

Consequently, the court explained that "only the 'rarest of circumstances and only overwhelming equitable concerns' would permit a court to shorten an otherwise permissible period for initiation of litigation because of delay," quoting Fox, 210 N.J. at 423. The court did not find any such and equitable concerns here, reasoning:

> Plaintiff's delay is not inexcusable or unexplained. And no prejudice has resulted to [d]efendants John and Regina Surgent. In reality, an enormous benefit has been conferred upon them. Since default in 2006,

> [p]laintiff has paid all of the carrying costs of the Property, including taxes and insurance, while Regina Surgent occupied the Property without payment. Since his release from prison, John Surgent has also resided at the Property.

Thus, the court refused to apply the doctrine of laches to bar plaintiff's right to foreclose.

Defendants argue on appeal that the court erred by failing to analyze any of plaintiff's specific conduct in delaying to file the subject foreclosure action. They argue, notwithstanding the statute of limitations, the court ignored the facts that plaintiff had no excuse for its delay and that plaintiff's conduct prejudiced the mortgage's prior assignees. They even list various times when plaintiff could have filed its action, many of which came before the 2006 default.

The trial court correctly noted that laches does not extend "broadly to cases governed by statutes of limitations." Fox, 210 N.J. at 423. "Substituting the equitable doctrine of laches for the clear guidance expressed in statutes of limitations would create a chaotic and unpredictable patchwork in which the only certainty would be the inconsistency of outcomes as different judges . . . evaluated timeliness individually." Ibid. See also Dynasty Bldg. Corp. v. Ackerman, 376 N.J. Super. 280, 288 (App. Div. 2005) ("Whether or not an action that is governed by a statute of limitations is time barred should be

24

determined on the basis of that statute and not on the basis of the equitable doctrine of laches.").

Even if we were to apply the doctrine of laches to the facts of this case, there would be no basis to find the trial court abused its discretion. Any delays in plaintiff's filing its foreclosure action were reasonable considering John's bankruptcy, criminal trial, and incarceration, as well as the federal forfeiture action involving the Property. Furthermore, during these times, Regina continued to live in the home without paying any expenses after February 2006; after the default, plaintiff paid the carrying costs on the Property, including taxes and insurance. At the time of its summary judgment motion, plaintiff had advanced almost $760,000 in escrow to pay the yearly real estate taxes of $60,000 and an additional amount for property insurance. "In foreclosure matters, equity must be applied to plaintiffs as well as defendants." Deutsche Bank Tr. Co. Ams. v. Angeles, 428 N.J. Super. 315, 320 (App. Div. 2012).

Finally, "[l]itigants generally have no standing to assert the rights of third parties." Bank of N.Y. v. Raftogianis, 418 N.J. Super. 323, 350 (Ch. Div. 2010). See e.g., Giles v. Phelan, Hallinan & Schmieg, LLP, 901 F. Supp. 2d 509, 532 (D.N.J. 2012) (finding plaintiffs could not challenge validity of assignments transferring their mortgage from one holder to another). Thus, contrary to

25

defendants' argument, the trial court did not err by ignoring whether delay prejudiced the prior mortgage assignees. Clearly, the court did not abuse its discretion in finding plaintiff's action was not barred by the doctrine of laches.

## C. Summary Judgment and Plaintiff's Standing to Foreclose

Defendants contend the trial court erred by granting summary judgment, asserting that plaintiff lacked standing to proceed with its foreclosure action, mandating a dismissal with prejudice. They specifically argue that a question of material fact existed because plaintiff was unable to prove or properly authenticate that it possessed or owned the original loan documents, or held a valid assignment, when the complaint was filed in 2017 or amended in 2018. In a related issue, defendants contend the trial court erred by granting summary judgment before discovery was completed, especially discovery as to the whereabouts of the original loan documents and as to the allegations that plaintiff committed fraud in its mortgage collection and predatory lending practices. We disagree.

Rule 4:46-2(c) directs that summary judgment shall be granted "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or

order as a matter of law."  On appeal, an appellate court employs that same standard and reviews the lower court's decision de novo.  Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).  No special deference is afforded to the trial court's interpretations of the law and legal consequences that flow from established facts.  Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).  Accord Invs. Bank v. Torres, 243 N.J. 25, 47 (2020) (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)).

To determine whether there is a genuine issue of material fact, a court must "draw[ ] all legitimate inferences from the facts in favor of the non-moving party."  Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)) (alteration in original).  It must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party."  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).  "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill, 142 N.J. at 540).  An issue

does not create a genuine dispute "[i]f there exists a single, unavoidable resolution of the alleged disputed issue of fact." Brill, 142 N.J. at 540 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). "[D]isputes on minor points do not" preclude summary judgment. Gilbert v. Stewart, 247 N.J. 421, 442 (2021) (citing J.H. v. R&M Tagliareni, LLC, 239 N.J. 198, 210 (2019)).

If there is no genuine issue of fact, the court then must decide whether the lower court's ruling on the law was correct. Liberty Surplus Ins. Corp. v. Nowell Amoroso, PA, 189 N.J. 436, 445-46 (2007). It is the non-moving party who must proffer specific facts demonstrating that there is a genuine issue of material fact. Housel v. Theodoridis, 314 N.J. Super. 597, 603-04 (App. Div. 1998).

Consequently, "[s]ummary judgment should be granted . . . 'after adequate time for discovery . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman, 242 N.J. at 472 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). However, "summary judgment is not premature merely because discovery has not been completed." Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015). "A party challenging a motion for summary judgment on grounds that discovery is as yet incomplete must show that 'there is a likelihood that further discovery would

supply . . . necessary information' to establish a missing element in the case." Mohamed v. Iglesia Evangelica Oasis De Salvacion, 424 N.J. Super. 489, 498 (App. Div. 2012) (quoting J. Josephson, Inc. v. Crum & Forster Ins. Co., 293 N.J. Super. 170, 204 (App. Div. 1996)). That is, summary judgment is premature when the non-moving party can show "with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action." Badiali, 220 N.J. at 555 (quoting Wellington v. Est. of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003)). Thus, when discovery is not completed, the court is required to review summary judgment "from the standpoint of whether there is any basis upon which plaintiff should be entitled to proceed further." Bilotti v. Accurate Forming Corp., 39 N.J. 184, 193 (1963).

"The only material issues in a foreclosure proceeding are the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgage premises." Great Falls Bank v. Pardo, 263 N.J. Super. 388, 394 (Ch. Div. 1993), aff'd, 273 N.J. Super. 542, 545 (App. Div. 1994). Thus, a plaintiff need only present three elements to establish a prima facie right to foreclose: "the execution, recording, and non-payment of the mortgage." Thorpe v. Floremoore Corp., 20 N.J. Super. 34, 37 (App. Div. 1952). Here,

however, defendants challenge plaintiff's standing to seek foreclosure of the mortgage, and not validity of the mortgage.

"[I]n order to foreclose a mortgage, a plaintiff must prove that it owns or controls the mortgage and the underlying note." Residential Mortg. Loan Tr. 2013-TT2 by U.S. Bank Nat'l Ass'n v. Morgan Stanley Mortg. Cap., Inc., 457 N.J. Super. 237, 240-41 (App. Div. 2018). Accord Cap. One, NA v. Peck, 455 N.J. Super. 254, 258-59 (App. Div. 2018); New Century Fin. Servs., Inc. v. Oughla, 437 N.J. Super. 299, 314 (App. Div. 2014); Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J. Super. 214, 224 (App. Div. 2011); Wells Fargo Bank, NA v. Ford, 418 N.J. Super. 592, 597 (App. Div. 2011); Raftogianis, 418 N.J. Super. at 327-28. "Absent a showing of ownership or control, a 'plaintiff lacks standing to proceed with the foreclosure action and the complaint must be dismissed.'" Mitchell, 422 N.J. Super. at 222 (quoting Ford, 418 N.J. Super. at 597). Indeed, even when the note is separated from the mortgage, the foreclosure plaintiff must demonstrate possession of the note and a valid mortgage assignment before filing the complaint in order to preclude one entity from foreclosing while another entity enforces the note. Cap. One, 455 N.J. Super. at 259-60.

Effective in February 2016, one year before commencement of this foreclosure action, provided:

> a. <u>Only the established holder of a mortgage shall take action to foreclose a mortgage</u>.
>
> b. A person, or entity, is the "established holder of a mortgage" if that person, or entity, is:
>
> > (1) the record holder of the mortgage as established by the latest record of assignment or by the original mortgage recording in the records of the county clerk or the register of deeds and mortgages, as appropriate to the county in which the mortgaged property is located, or
> >
> > (2) found to be the holder of the mortgage in a civil action joining as defendants the record holder of the mortgage, the mortgagor, and any other person known to have an interest in the mortgage.
>
> c. The provisions of this section shall not abridge, impair, invalidate, or supersede any other rights, under law, of any person known to have an interest in a mortgage.
>
> [N.J.S.A. 48:18-13 (emphasis added).]

Thus, to have standing to foreclose, a plaintiff must hold or possess an original mortgage or recorded assignment, or be found to be the record mortgage holder in a civil action, at the time it files its foreclosure action. That is, standing may be established through "either possession of the note or an assignment of

31

the mortgage that predated the original complaint." Angeles, 428 N.J. Super. at 318.

Here, the trial court held that plaintiff had demonstrated proof of the mortgage execution, the recording of the lien, and the non-payment of the mortgage, and that defendants' contesting answers had "failed to challenge any of the essential elements of the foreclosure action." Thus, the court was satisfied that, "[s]ince the execution, recording, and non-payment of the mortgage was conceded," plaintiff had made out a prima facie right to foreclose. The court also was satisfied, from plaintiff's certifications, that plaintiff was in possession of the original note and documents. In fact, citing Angeles, 428 N.J. Super. at 315, the court determined that plaintiff was "the original lender by way of merger and has certified to its possession of the original Note."

Additionally, the trial court rejected defendants' claim that plaintiff's summary judgment motion was premature because discovery had not been completed. The court refused to delay the matter because the delay was prejudicing plaintiff. It further found that John was a party without standing to contest the mortgage's validity and, therefore, was conducting irrelevant, overly burdensome discovery. The court explained that John already had

> submitted to [p]laintiff three document requests (with eighty-one (81) categories of documents), 45

interrogatories, and 236 requests to admit. His discovery sought is irrelevant (for example, information on collateralized debt obligations and agreements he is not a party to and documents relating to various other matters involving [p]laintiff in other jurisdictions), improper (such as admission requests calling for [p]laintiff to admit conclusions of law), and overly burdensome. Further, to the extent John Surgent has requested relevant discovery, he has already been served with [p]laintiff's responses to Kessler's document requests and interrogatories, plus an additional 1,089 pages of documents.

Defendants argue on appeal that the trial court erred because, when the complaint was filed in 2017, Merrill Lynch alleged that it was only "the servicer" of mortgages for Merrill Lynch Credit Corporation, as opposed to the owner or valid assignee of the original loan documents.

Defendants further claim that no certification or affidavit has ever been provided that properly authenticated BOA's or Merrill Lynch's physical possession or ownership of the original loan documents or a valid assignment at the time the foreclosure action was initiated or amended. They claim that attorney Shirley Pimm's 2017 certification of diligent inquiry attached to the complaint, and attorney Gena Koutsouris's 2019 certification of diligent inquiry attached to plaintiff's amended complaint, are insufficient for authenticating ownership or possession because they were not based on personal knowledge that Merrill Lynch or plaintiff had actual possession of the loan documents at

the time of filing; rather, they were only based on communications with employees who claimed to have personally reviewed the documents at some point in time.

In a 2017 certification of diligent inquiry, Pimm attested:

> 1. On April 13, 2017, I communicated by written communication with the following named employee(s) of PHH Mortgage Corporation, who stated that he/she personally reviewed the complaint on March 22, 2017 to be filed with the court and that he/she confirmed compliance with Rule 4:64-1(b)(1) through (b)(10) and (b)(12) through (b)(13).
>
> 2. The name, title and responsibilities of the plaintiff's employee(s) or plaintiff's mortgage loan servicer's employee(s) with whom I communicated are: Dennis Herman, Assistant Vice President, whose responsibilities are to review and execute documents.
>
> 3. The above-named employee(s) stated that the relationship between his/her employer and the plaintiff is: servicer, and confirmed that his/her employer is authorized to act on behalf of the plaintiff in this action.
>
> 4. Based on my communication with the above-named employee(s) of plaintiff or plaintiffs mortgage loan servicer, as well as my own inspection of the loan information supplied by the plaintiff or the plaintiff's mortgage loan servicer and other diligent inquiry, I execute this certification to comply with the requirements of Rules 1:4-8(a), 1:5-6(c)(1)(E), and 4:64-1 (a)(2) and (a)(3).

In a March 2019 certification of diligent inquiry, Koutsouris attested:

34

1. I, Gena Koutsouris, Esq., communicated with Denise Wall Iskierski by reviewing on March 11, 2019 a review checklist that Denise Wall Iskierski completed on February 25, 2019 which stated that [s/he] personally reviewed all documents reflected thereon and a written LPS intercom communication that Denise Wall Iskierski completed on February 25, 2019 which stated that [s/he] personally reviewed all relevant documents attached thereto.

2. On March 11, 2019, I communicated by written communication, dated February 25, 2019, with the following named employee(s) of Bank of America, N.A., who informed me that he/she personally reviewed the certification of amount due and the original or true copy of the note, mortgage and recorded assignments, if any, about to be submitted to the court; and that he/she confirmed the accuracy of those documents:

Name of the employee(s): Denise Wall Iskierski

Title of the employee(s): Assistant Vice President

Responsibilities of the employee(s): monitoring of foreclosure loans and processing of related documents.

3. Based on my communication with the above-named employee(s) of the plaintiff or the plaintiff's mortgage loan servicer, as well as my own inspection of the documents about to be filed with the court and other diligent inquiry, I execute this certification to comply with the requirements of Rule 4:64-2(d) and Rule 1:4-8(a).

Plaintiff argues that defendants' failure to respond to or dispute the facts submitted in plaintiff's statement of material facts in support of its motion for

summary judgment, which included plaintiff's assertion that it possessed the original loan documents, resulted in defendants admitting all of those factual claims. Rule 4:46-2(b) states:

> A party opposing the [summary judgment] motion shall file a responding statement either admitting or disputing each of the facts in the movant's statement. Subject to R. 4:46-5(a), all material facts in the movant's statement which are sufficiently supported will be deemed admitted for purposes of the motion only, unless specifically disputed by citation conforming to the requirements of paragraph (a) demonstrating the existence of a genuine issue as to the fact. An opposing party may also include in the responding statement additional facts that the party contends are material and as to which there exists a genuine issue. Each such fact shall be stated in separately numbered paragraphs together with citations to the motion record.

Despite not having submitted the responding statement required by Rule 4:46-2(b), defendants argue that plaintiff's assertion about physical possession in a motion's statement of material facts does not sufficiently authenticate such physical possession at the time the action was filed. They contend that plaintiff cannot rehabilitate its lack of standing to bring the action by filing a new motion certification one year later, and they point to the 2018 certification of Leticia Pasillas to support plaintiff's motion for summary judgment. Pasillas was plaintiff's assistant vice president, and she attested that she had reviewed the

36

relevant business records and documents, and had personal knowledge that "[p]laintiff or its agent had physical possession of and held the original Note and Mortgage at the time this action was filed on April 13, 2017, and continues to do so today."

Here, defendants do not dispute the actual chains of title of the note or mortgage. In fact, defendants do not dispute executing the note and mortgage with the original mortgagee Merrill Lynch, or that there were no invalid recorded mortgage assignments until the mortgage was ultimately assigned back to Merrill Lynch in 2007, or that Merrill Lynch merged into BOA in 2011, or that default occurred in 2006. Moreover, as the surviving corporation of its merger with Merrill Lynch in 2011, BOA possessed all of Merrill Lynch's property and rights. See N.J.S.A. 14A:10-6(d) ("All real property and personal property, tangible and intangible, of every kind and description, belonging to each of the corporations so merged or consolidated shall be vested in the surviving or new corporation without further act or deed."). Thus, even when viewed in a light favorable to defendants, the chains of title of the note and mortgage are clear and show no competing claims of ownership that could prejudice defendants. See Residential Mortg., 457 N.J. Super. at 242-43 (discussing the purpose of N.J.S.A. 46:18-13).

Defendants' arguments essentially assert violations of Rule 4:64, which procedurally governs the foreclosure complaint. Prior to rule amendments in 2011, courts "required a certification based on personal knowledge" showing that plaintiff had standing to bring the complaint. Pressler & Verniero, N.J. Current Court Rules, cmt. 2 on R. 4:64-1 (2022). However, under the amendments, plaintiff's right to bring the action must still be specifically alleged but proof of that fact may be by certification based on business records; personal knowledge is no longer required. Rule 4:64-1 now states that

> In all residential foreclosure actions, plaintiff's attorney shall annex to the complaint a certification of diligent inquiry:
>
> (A) confirming that the attorney has communicated with an employee or employees of the plaintiff or of the plaintiff's mortgage loan servicer (i) who personally reviewed the complaint and confirmed the accuracy of its content . . . based on business records kept in the regular course of business by the plaintiff or the plaintiff's mortgage loan servicer, and (ii) who, if employed by the plaintiff's mortgage loan servicer, (a) identified the relationship between the mortgage loan servicer and the plaintiff, and (b) confirmed the authority of the mortgage loan servicer to act on behalf of the plaintiff; and
>
> (B) stating the date and mode of communication employed and the name(s), title(s) and responsibilities in those titles of the plaintiff's or plaintiff's mortgage loan servicer's employee(s) with whom the attorney

38

communicated pursuant to paragraph (a)(2)(A) of this rule.

[R. 4:64-1(a)(2).]

Plaintiff complied with these requirements. It provided the required certification of diligent inquiry with the complaint and it did not violate Rule 4:64-1(a)(2), since an employee need only verify the information based on business records, and personal knowledge is not required.

Furthermore, defendants' argument that the court abused its discretion by not allowing further discovery before granting summary judgment lacks merit. The record showed that plaintiff possessed standing to foreclose on the mortgage as the original lender by way of merger and having certified to its possession of the original documents. As noted by the court, plaintiff provided defendants with all of the discovery they had requested at the time, as well as the discovery Kessler requested. No further discovery was necessary. Defendants cannot now argue that plaintiff's complaint was "insufficient" or that plaintiff did "not come to court with clean hands," as they raised no such arguments before the trial court nor did they file motions to dismiss the complaint for failure to state a cause of action.

We are satisfied the trial court did not err by rejecting defendants' claim that plaintiff lacked standing to foreclose, and did not abuse its discretion by

granting summary judgment without allowing additional discovery to be completed.

## D. Standing and Third-Party Rights

Defendants contend that BOA and Merrill Lynch (which identified itself in the initial complaint only as a mortgage servicer) lacked standing to bring a foreclosure action since they did not identify the names of the real owners of the bonds that had secured the Property. That is, defendants allege that neither BOA nor Merrill Lynch actually funded the loan; rather, funding was provided through the sale of bonds purchased by a mortgage pool of individual collateralized debt obligation (CDO) holders, i.e., who are the true owners of the mortgage. Consequently, defendants maintain that neither Merrill Lynch nor the Bank have standing to foreclose and, as they have not provided the names of the CDO holders or proved receipt of the mortgage as security for the purchased bonds, they never proved the chain of the mortgage assignments between the various investors.

This argument lacks merit. Defendants do not have standing to allege that an assignment or contract between multiple third parties, such as between Merrill Lynch or BOA and the CDO holders is invalid. See Abbott ex rel. Abbott v. Burke, 206 N.J. 332, 371 (2011) (stating "a litigant typically does not have

standing to assert the rights of third parties"); In re Walker, 466 B.R. 271, 284-85 nn.28-29 (E.D. Pa. 2012) (collecting cases and noting "judicial consensus . . . holding that a borrower lacks standing to (1) challenge the validity of a mortgage securitization or (2) request a judicial determination that a loan assignment is invalid due to noncompliance with a pooling and servicing agreement, when the borrower is neither a party to nor a third party beneficiary of the securitization agreement").  See, e.g., Giles, 901 F. Supp. 2d at 532 (finding debtors could not challenge assignments between mortgage holders); Correia v. Deutsche Bank Nat'l Tr. Co., 452 B.R. 319, 324-25 (B.A.P. 1st Cir. 2011) (holding debtors lacked standing to argue assignment of their mortgage violated pooling and servicing agreement because they were not parties to agreement or third party beneficiaries).

### E.  Summary Judgment and Failure to File Federal Petition

Defendants next contend the trial court erred by granting summary judgment and not finding the mortgage was void because plaintiff failed to file a petition in the ancillary federal criminal forfeiture action.  They claim that plaintiff's failure resulted in the automatic and permanent extinguishment of its rights to the Property since the United States gained clear title to the Property.

41

Although no deference is afforded to the trial court's legal conclusions, Templo, 224 N.J. at 199, we affirm the trial court's rejection of defendants' argument as they have presented no genuine issue as to any material fact and plaintiff is entitled to judgment as a matter of law.

Under 21 U.S.C. § 853(a), the United States can seek forfeiture of a criminal defendant's assets to the extent that the assets are associated with or derived from criminal activity. For third parties who claim an interest in those forfeited assets, the relevant statute is 21 U.S.C. § 853(n). Its purpose is to allow a federal court to amend its forfeiture orders when a third party claims an interest in the property to be forfeited to the federal government. In Libretti v. United States, 516 U.S. 29, 44 (1995), the Court found that once the federal government has secured a stipulation as to the criminal forfeitability of an asset, 21 U.S.C. § 853(n) provides the only means by which the rights of third party claimants can be returned or vindicated.

21 U.S.C. § 853(n) (emphasis added) states:

> (1) Following the entry of an order of forfeiture under this section, the United States shall publish notice of the order and of its intent to dispose of the property in such manner as the Attorney General may direct. The Government may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in the property that is the

subject of the order of forfeiture as a substitute for published notice as to those persons so notified.

(2) Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

(3) The petition shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought.

(4) The hearing on the petition shall, to the extent practicable and consistent with the interests of justice, be held within thirty days of the filing of the petition. The court may consolidate the hearing on the petition with a hearing on any other petition filed by a person other than the defendant under this subsection.

(5) At the hearing, the petitioner may testify and present evidence and witnesses on his own behalf, and cross-examine witnesses who appear at the hearing. The United States may present evidence and witnesses in rebuttal and in defense of its claim to the property and cross-examine witnesses who appear at the hearing. In addition to testimony and evidence presented at the hearing, the court shall consider the relevant portions of the record of the criminal case which resulted in the order of forfeiture.

A-5423-18

(6) If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that –

    A. the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

    B. the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination.

(7) Following the court's disposition of all petitions filed under this subsection, or if no such petitions are filed following the expiration of the period provided in paragraph (2) for the filing of such petitions, the United States shall have clear title to property that is the subject of the order of forfeiture and may warrant good title to any subsequent purchaser or transferee.

Here, the court rejected the argument that plaintiff's failure to submit a petition in the federal forfeiture proceeding caused it to forfeit its interest in the Property. Relying on 21 U.S.C. § 853(n)(7), the court acknowledged that a third

party risks its interest being extinguished in a soon-to-be forfeited property if it does not file a petition asserting that interest following publication by the Government of a forfeiture order. However, under 21 U.S.C. § 853(n)(1)," such proceedings are only triggered where the Government prevails and an order for forfeiture is entered." This was not the case here as Regina and the LLC had prevailed and Merrill Lynch and BOA had entered into a consent agreement with the United States on April 14, 2008, wherein the government agreed to forbear from divesting their interests in the criminal forfeiture action against John. As the trial court explained:

> When the final order of forfeiture was entered, the Property was not included and [p]laintiff was never required to protect its interest by filing a petition. See United States v. Gilbert, 244 F.3d 888 (11th Cir. 2001) (holding that third parties must wait until the final order of forfeiture before they can file an ancillary petition). In actuality, a Consent Order was entered into . . . memorializing an agreement between the Government and [p]laintiff that [p]laintiff had a legitimate interest in the Property superior to that of the Government and that the Government would forbear from divesting the interest of [p]laintiff in its forfeiture action.
>
> Even if the matter had proceeded as to the Property, the purpose of such petitions are [sic] put the Government on notice that a third-party is asserting an interest in to-be-forfeited property. See 21 U.S.C. § 853(n)(2). A hearing is then scheduled to "adjudicate the validity of [the third party's] alleged interest in the property." Id. The Consent Order is clear indicia that

45

the Government was (1) on notice as to [p]laintiff's claim and (2) had no question as to its validity. Any hearing, in which [p]laintiff's interest would have been uncontested by the Government, would have been unnecessary. And, in any event, Regina Surgent and the LLC prevailed, the Property was not subject to forfeiture, and there was no extinguishing of any interests in the Property.

Thus, again citing 21 U.S.C. § 853(n)(7), the trial court found that "[t]he plain language of the statute . . . provides that the only consequence of failing to file a petition is that the United States shall have clear title to the property that is the subject of the order of forfeiture." Because defendants "failed to cite a single case to the contrary," the court rejected their argument that plaintiff's failure to file a petition in the federal forfeiture action resulted in the extinguishing of any of its rights in the Property.

Defendants argue on appeal that the April 2008 consent agreement directly contravened 21 U.S.C. § 853(k)(1), which bars third party claimants from intervening in or appealing a federal forfeiture action except by filing a petition as provided in § 853(n). Thus, according to defendants, plaintiff's only recourse was to file a § 853(n) petition, which it never did, so its interest in the Property is extinguished and it has no standing to foreclose.

The flaw in defendants' argument is that they essentially are asking this court to apply federal statutes to overturn an ancillary federal proceeding to

46

include forfeiture of the Property in the final forfeiture order. None of the cases defendants cite support their argument. Indeed, defendants ignore that the federal district court: 1) amended its 2006 preliminary forfeiture order to exclude the Property in its 2009 final forfeiture order; and 2) found that Regina, individually or through her sole ownership of the LLC, held a 100 percent interest in the Property, which then could not be forfeited to the United States. Consequently, the United States never obtained clear title to the Property under § 853(n)(7), notwithstanding that plaintiff never filed a § 853(n) petition.

Moreover, final orders of forfeiture or other relief awarded by the federal court are entitled to full faith and credit, and are not subject to collateral attack. See Howlett by & through Howlett v. Rose, 496 U.S. 356, 367 (1990) (stating Supremacy Clause forbids state courts from ignoring federal law because of disagreement with its content); N.J. Higher Educ. Assistance Auth. v. Pennell, 377 N.J. Super. 13, 26 (App. Div. 2005) (holding court is "bound under the Supremacy Clause of the United States Constitution" to follow federal law).

We are satisfied the trial court did not err by finding that defendants failed to raise a genuine issue of material fact that the mortgage was void because plaintiff failed to file a petition in the ancillary federal criminal forfeiture action.

A-5423-18

### F.  Summary Judgment and Lis Pendens

Defendants further contend that the trial court erred by granting summary judgment when a question of material fact existed as to why plaintiff had filed a discharge of lis pendens on January 30, 2017, resulting in its abandoning the prior state foreclosure action.  They allege that plaintiff's discharge of lis pendens contained the false and misleading statement that a reason for the discharge was because "the matters and things in dispute had been amicably adjusted between the parties, and therefore, the said Lis Pendens should be discharged of record."  In fact, defendants claim that plaintiff missed several deadlines in the prior action, which should have led the court to file a dismissal with prejudice since plaintiff abandoned its right to foreclose under N.J.S.A. 2A:15-17.

We are satisfied this argument lacks merit, for the following reasons. First, the prior foreclosure action ended with the trial court dismissing the complaint without prejudice, which defendants never appealed and which allowed plaintiff to file a new timely action.  See Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 415-16 (1991) ("Only a judgment 'on the merits' will preclude a later action on the same claim.") (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)).  Thus, it is immaterial to the current

action whether plaintiff abandoned that prior action. N.J.S.A. 2A:15-17 is not

applicable, as it states:

> When a judgment made in an action, of the pendency of which notice has been filed as herein provided, is paid, satisfied or performed, or the action has been settled by the parties thereto or has been abandoned by plaintiff therein, a statement of such payment, satisfaction, performance, settlement or abandonment shall be entered by the county clerk or register of deeds and mortgages in whose office the notice has been filed, upon the receipt and filing by him of a warrant for that purpose, executed by the party who filed the notice, or his attorney, as warrants to satisfy judgments are required to be executed.

> If the judgment has been paid, satisfied or performed or the action has been settled or abandoned as aforesaid, but the party who filed the notice of lis pendens fails to file the warrant stated, the court having jurisdiction of the action may, upon being satisfied of the fact of such payment, satisfaction, performance, settlement or abandonment and upon such notice as it may by its order direct, order the real estate affected and described in the notice of lis pendens to be discharged of all claims or equities set up in the complaint in the action.

> The county clerk or register of deeds and mortgages shall, upon the filing by him of the warrant mentioned in the first paragraph of this section or upon the filing by him of the original or a certified copy of the order mentioned in the second paragraph of this section, note in the margin of the record of the lis pendens notice the discharge thereof by the warrant or order.

> Thereupon the real estate affected by the action and
> described in the notice shall be discharged of all claims
> or equities set up in the complaint in the action.

Second, plaintiff's current foreclosure action was filed within the applicable statute of limitations, so any reason behind the discharge of lis pendens is immaterial now. Third, a lis pendens is a required filing intended to notify third parties that a legal proceeding is pending and asserting a claim against title or other ownership interest in real property. N.J.S.A. 2A:15-6. As the complaint in the prior foreclosure action was dismissed, plaintiff also was required to discharge the lis pendens on the Property. N.J.S.A. 2A:15-17. Thus, any other reason for the discharge is immaterial.

Fourth, defendants' allegation of a false and misleading statement by counsel on the certification in the prior action asserts an ethical matter that may result in attorney discipline if proven, not a genuine issue of material fact effecting the merits of this current action or the trial court's grant of summary judgment.

### G. Summary Judgment and Alleged Federal Violations

Defendants contend the trial court erred by granting summary judgment when questions of material fact existed as to whether plaintiff's conduct violated various federal laws relating to mortgages. Specifically, defendants allege that

plaintiff and the former holders/assignees of the mortgage violated the Consumer Financial Protection Act (CFPA), 12 U.S.C. §§ 5531 and 5536, the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p, and the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376-2223. This argument lacks merit.

The trial court rejected defendants' allegation that plaintiff violated the FDCPA. The court determined, citing Henson v. Santander Consumer USA Inc., 582 U.S. ___, 137 S. Ct. 1718 (2017), that plaintiff was not a debt collector subject to the FDCPA because the debt it sought to collect was its own. In Henson, the Supreme Court held that the FDCPA does not apply to debt collectors collecting debts owed to themselves. Id. at 1721.

The trial court also rejected defendants' allegation of predatory lending, finding that our courts "have refused to recognize predatory practices in the mortgage context." The court quoted United Jersey Bank v. Kensey, 306 N.J. Super. 540, 552 (App. Div. 1997), which stated that "there is no presumed fiduciary relationship between a bank and its customer. The virtually unanimous rule is that creditor-debtor relationships rarely give rise to a fiduciary duty."

Defendants argue on appeal that MLCC and its assignees, "and its successor via acquisition Bank of America," have been fined by various state

51

and federal agencies for predatory and illegal mortgage practices. They rely on press releases, news articles, and other court decisions describing various instances of illegal actions, and then allege that they, too, were the victims of the same illegal mortgage practices. Defendants also point to the alleged false and misleading statement on plaintiff's 2017 discharge of lis pendens, together with allegations that plaintiff failed to perform proper investigation and due diligence before extending credit to John and the LLC, and then conducted improper practices and methods to collect the debt owed on the Property.

Defendants' arguments fail because they are based on entirely conclusory allegations and innuendo. Mere speculation cannot defeat summary judgment. That is, "[c]ompetent opposition [to a summary judgment motion] requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. AsSeenOnTV.com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (quoting Merchs. Express Money Ord. Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005)). "'[C]onclusory and self-serving assertions' . . . without explanatory or supporting facts will not defeat a meritorious motion for summary judgment." Id. at 425-26 (quoting Puder v. Buechel, 183 N.J. 428, 440 (2005)). In James Talcott, Inc. v. Shulman, 82 N.J. Super. 438, 443 (App. Div. 1964), the court stated that "[m]ere sworn

conclusions of ultimate facts, without material basis or supporting affidavits by persons having actual knowledge of the facts, are insufficient to withstand a motion for summary judgment."

We are satisfied the trial court did not err by granting summary judgment and rejecting defendants' claims that questions of material fact existed as to whether plaintiff's conduct violated various federal laws relating to mortgage foreclosures.

## H.  Calculation of Amount Due

Defendants further contend the trial court erred by overruling John's objection to the calculation of the amount due.  We disagree.

Rule 4:64-1(d)(3) (emphasis added) provides that

> [a]ny party having the right of redemption who disputes the correctness of the affidavit of amount due may file an objection stating with specificity the basis of the dispute and asking the court to fix the amount due.  On receipt of a specific objection to the motion, the Office of Foreclosure shall refer the matter to the judge in the county of venue, who shall schedule such further proceedings and notify the parties or their attorneys of the time and place thereof.

When John objected to calculation of the amount due and opposed entry of a final judgment, he alleged that various advances, when added to the principal, equaled less than $2,595,236.19, which was the amount sworn to by

plaintiff; however, he did not go into detail. Instead, John presented eight objections to the court, which were similar to the issues he had previously raised: 1) plaintiff did not prove it had possession of the original note and mortgage at the time the action commenced; 2) plaintiff violated the FDCPA; 3) plaintiff violated predatory lending laws; 4) plaintiff did not have the names of the CDO owners who were assigned the Property as security for their debt; 5) plaintiff lost any and all rights and interests in the Property by not filing a petition in the ancillary proceeding of the criminal forfeiture matter; 6) the Second Circuit has ruled that a criminal forfeiture matter was a quiet title action, not an adversarial proceeding, and therefore, plaintiff lost any rights to the Property; 7) the subject matter is presently being reviewed by the Consumer Financial Protection Bureau and the U.S. Attorney's Office; and 8) the subject matter was subsequently discharged of record by plaintiff's filing of lis pendens.

The court overruled John's objection to calculation of the amount due, finding that the law of the case precluded him from relitigating those issues already decided when it granted plaintiff's motion for summary judgment in July 2018. Furthermore, the court noted that John had not raised "a single challenge to the calculation of the amount due on the mortgage." The court explained:

> Defendant's sole contention that is at all relevant to the
> instant application was raised during oral argument,

when asked by the Court how much he believed to be owed, and [d]efendant simply stated "zero." However, this response obviously fails to meet the standard outlined by the court rules and case law, which require the litigant to detail <u>with specificity</u> the basis of the objection.

The trial court also found that John's objection to the calculation was untimely and "well past the 10-day time period for filing" an objection to the amount due. Thus, because John "did not file any opposing proofs concerning the amount due, and instead has merely attempted to re-litigate issues already addressed at prior stages of the litigation and rejected," the court remanded the matter back to the Office of Foreclosure, holding: 1) plaintiff's "calculations are uncontested"; 2) John failed to demonstrate a basis for retaining this matter for further consideration on the merits; and 3) plaintiff's proofs were "satisfactory."

On appeal, defendants raise no new arguments as to the calculation of the amount due and they do not challenge the untimeliness of John's objection. Instead, they rely on the same arguments John advanced in the trial court, claiming that the amount owed is a legal nullity. Once again, their submissions fail to comply with the specificity requirement in <u>Rule</u> 4:64-1(d)(3). Furthermore, <u>Rule</u> 4:64-1(d)(3) only applies to parties "having the right of redemption," and there are no proofs, arguments, or allegations presented here that John held that right or could have paid the outstanding mortgage balance

and all costs incurred during the foreclosure process.  We therefore affirm the trial court's decision to overrule John's objection to calculation of the amount due.

## I. Equitable Rights

Defendants further contend the trial court erred by finding that plaintiff also had the right to foreclose under the equitable doctrines of equitable mortgage, ratification, and equitable subrogation.  Because the record provides no basis to find plaintiff's mortgage invalid or unenforceable, we need not reach these issues, which were alternatively raised in the trial court.

## III.  Kessler's Appeal

Kessler contends the trial court erred by finding that he lacked standing to contest the validity of the mortgage and challenge the foreclosure because he was a third-party stranger to the action.  In a related issue, he contends that the court erred by striking his claims filed against Regina, which alleged fraudulent conveyance and reverse veil piercing, after finding that they were non-germane in a foreclosure action pursuant to Rule 4:64-5.

In its written decision, the trial court addressed Kessler's standing to challenge the foreclosure and assert his counterclaims and his third-party

A-5423-18

complaint against Regina. As to "whether or not the claimant has a sufficient stake in the outcome of the litigation," the court concluded:

> Here, Kessler does not have any non-remote stake in the outcome of the foreclosure action. His judgment is against Regina Surgent individually. Unlike a judgment creditor with a valid lien against a property, whose lien would be extinguished by a superior lender's foreclosure action, Kessler has no lien against the Property to extinguish. Whether or not [p]laintiff is successful in its foreclosure will have no impact on the enforceability of Kessler's judgment.

In fact, quoting Rosenstein v. State, Department of Treasury, Division of Pensions & Benefits, 438 N.J. Super. 491, 496 (App. Div. 2014), the trial court referred to Kessler as "the quintessential 'stranger to the dispute' upon whom standing will not be conferred." The court explained:

> While Kessler has vehemently resisted application of the general principal that litigants in foreclosure cases "generally have no standing to assert the rights of third parties," Bank of N.Y. v. Raftogianis, 418 N.J. Super. 323, 350 (Ch. Div. 2010), he has not cited a single case or authority in which standing was conferred upon a third-party judgment creditor seeking to challenge the validity of the underlying mortgage. To the contrary, [p]laintiff has cited numerous examples, such as Adelman v. BSI Fin. Servs., 453 N.J. Super. 31 (App. Div. 2018), in which a breach of contract and Consumer Fraud Act claims against the lender were dismissed because the claimant "'was not a party to the original mortgage, note, or modification . . . .'" Further, Kessler's judgment is against Regina

57

Surgent individually; he has no judgment against the LLC and has no interest in the Property.

The court further stated that "standing is not automatic" and found "that, at its essence, this is a foreclosure action brought by [p]laintiff to recover the collateralized security for a loan twelve (12) years in default." The court added that this was "not an open forum in which any party may assert any claim it may have against any other party." The court held that Kessler lacked standing to challenge the foreclosure and raise claims against Regina and therefore it struck Kessler's answer and dismissed with prejudice his counterclaims and third-party complaint against Regina.

In addition to finding that Kessler lacked standing, the court found that his claims raised against Regina were "non-germane to the foreclosure and fit for dismissal" as no initial leave had been granted for Kessler to raise them. The court relied on Rule 4:64-5, which is an exception to the entire controversy rule, Rule 4:30A, and which states:

> Unless the court otherwise orders on notice and for good cause shown, claims for foreclosure of mortgages shall not be joined with non-germane claims against the mortgagor or other persons liable on the debt. Only germane counterclaims and cross-claims may be pleaded in foreclosure actions without leave of court. Non-germane claims shall include, but not be limited to, claims on the instrument of obligation evidencing the mortgage debt, assumption agreements and

58

guarantees. A defendant who chooses to contest the validity, priority or amount of any alleged prior encumbrance shall do so by filing a cross-claim against that encumbrancer, if a co-defendant, and the issues raised by the cross-claim shall be determined upon application for surplus money pursuant to R. 4:64-3, unless the court otherwise directs.

[R. 4:64-5 (emphasis added).]

The trial court, however, noted that Kessler's fraudulent conveyance and reverse veil piercing counterclaims, "if successful, would thereby either invalidate the transfer such that the Property would be held by Regina Surgent (and would thus be reachable by his judgment) or have the court disregard the corporate form and use the LLC's assets to satisfy the debt of Regina Surgent." According to the court, success on either claim would allow Kessler to assert his judgment against the Property.[8]

Kessler argues on appeal that the trial court's standing analysis is flawed because it relied on cases involving a plaintiff's standing to foreclose on a mortgage or on cases not discussing standing at all. He claims that his judgment against Regina essentially relates to legal services he provided for the LLC, that

---

[8] While the classic application of veil piercing involves accessing a corporate owner or shareholder's assets to enforce a judgment against the corporation, "reverse veil piercing" involves using corporate assets to satisfy a judgment against its owner or shareholder. In re Blatstein, 192 F.3d 88, 100 (3d Cir. 1999).

is, to preserve the Property, the LLC's sole asset. Thus, in light of the fact that our courts apply a liberal standard in determining standing, Kessler asserts that he was not a "stranger to the dispute" because his interests are averse to plaintiff's interests, because a valid mortgage would affect and prejudice his ability to collect his judgment against Regina, and because a decision favorable to plaintiff's foreclosure will remove an asset, the Property, from which he could ultimately collect his unpaid legal fees.

In addition, Kessler argues that the court erred by finding that his claims against Regina were non-germane to the foreclosure action and fit for dismissal. He gives no reasons for his position other than it was inconsistent for the court to have ruled on the merits of his claims if he lacked standing to raise them and they were non-germane to the foreclosure. According to Kessler, the appropriate action for the court would have been to strike the counterclaims without prejudice so they could be severed and transferred to the Law Division; however, Kessler has not requested us to modify the trial court's order – he only requests reversal of the summary judgment order and foreclosure.

In their letter clarifying their reliance on Kessler's brief, John and the LLC support plaintiff's opposition to Kessler's standing issues, without adding any specific arguments. However, they agree with Kessler that the court should not

60

have ruled on the merits of his affirmative claims after finding they were not germane to the foreclosure action.

Kessler argues that Jersey Shore Medical Center-Fitkin Hospital v. Estate of Baum, 84 N.J. 137 (1980), is on point and controlling. Plaintiff responds that Baum is inapposite and that Kessler, once again, has cited no case or authority that confers a third-party judgment creditor with standing to challenge the validity of the underlying mortgage. Plaintiff further contends that Kessler's counterclaims are not directed at BOA and are, therefore, non-germane.

In Baum, the Court held that "standing to assert the rights of third parties is appropriate if the litigant can show sufficient personal stake and adverseness so that the Court is not asked to render an advisory opinion." Id. at 144. The case concerned a challenge to the doctrine of necessaries and whether the plaintiff hospital could bring an action against a wife for the substantial expenses her deceased husband incurred after becoming ill and dying during the marriage. Ibid. The Court ruled the hospital had standing to bring the action because, as a practical matter, no one could have asserted the husband's third-party equal protection claim against the doctrine of necessaires, an antiquated common law rule permitting recovery of expenses against a husband, but not a wife. Id. at 140-41, 144. In fact, at that time, a husband could raise a challenge to the

doctrine of necessaries only if he were sued by the hospital to recover the last illness expenses of his wife; thus, the Court concluded that when a wife is sued by a hospital for her husband's last illness expenses, "the hospital has a sufficient stake in this controversy to accord it standing to challenge the doctrine of necessaries." Id. at 144. Consequently, Baum is inapposite.

The flaw in Kessler's argument is that Regina was only a former owner of the Property; she was not the mortgagor or a person liable in any way on the debt. Furthermore, despite his assertion that his judgment against Regina essentially related to legal services he provided for the LLC, Kessler did not obtain a judgment against the LLC, the owner of the Property at the time when the loan was executed and when plaintiff filed its foreclosure action. Thus, he cannot enforce his money judgment against the LLC to obtain an interest in the Property without first obtaining a separate judgment affirming his claims against Regina of reverse veil piercing and fraudulent conveyance. This foreclosure action was not the appropriate forum to litigate such claims.

"The only material issues in a foreclosure proceeding are the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgage premises." Pardo, 263 N.J. Super. at 388. A plaintiff need only present three elements to establish a prima facie right to foreclose:

"the execution, recording, and non-payment of the mortgage." Thorpe, 20 N.J. Super. at 37.

Upon considering those controlling benchmarks, although Rule 4:64-5 lacks specific application guidance, a counterclaim is germane if it is a "claim arising out of the mortgage foreclosed," Joan Ryno, Inc. v. First Nat'l Bank of S. Jersey, 208 N.J. Super. 562, 570 (App. Div. 1986), or contests "the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgaged premises[.]" Sun NLF Ltd. P'ship v. Sasso, 313 N.J. Super. 546, 550 (App. Div. 1998). See, e.g., Assocs. Home Equity Servs., Inc. v. Troup, 343 N.J. Super. 254, 271-73, 273 n.5 (App. Div. 2001) (finding defendant's statutory claims germane because "successful recoupment defense acts to reduce the amount the plaintiff can recover on the claim for the debt when the counterclaim arises from the same transaction"). In fact, the small number of decisions addressing the issue generally agree that germane claims include those that challenge, as equitable defenses to foreclosure, the right of the plaintiff to foreclose or otherwise dispute the amount of the mortgagor's indebtedness, and crossclaims that contest the priority or amount of a prior encumbrance. See generally Delacruz v. Alfieri, 447 N.J. Super. 1, 14-21 (Law Div. 2015) (collecting and discussing cases).

A-5423-18

Notwithstanding the trial court's remark that success on Kessler's counterclaims and third-party complaint against Regina would allow him to assert his judgment against the Property, allegations of fraudulent conveyance and reverse veil piercing do not affect the validity of the mortgage or note, the amount of the indebtedness, or plaintiff's right to foreclose. Regina was not a party to those transactions and, therefore, not obligated by the debt. In fact, contrary to the trial court's remarks, success on Kessler's claims would not prevent the foreclosure; rather, success would only allow him to enforce his judgment on any remaining proceeds from the sale of the Property, after satisfaction of the mortgage loan owed to plaintiff. Thus, the court did not err by finding that Kessler's claims were non-germane to plaintiff's foreclosure action. Accordingly, that finding only reinforces Kessler's lack of standing to contest the validity of the mortgage and challenge the foreclosure.

Moreover, since there are no genuine issues of material fact as to the legal questions of whether Kessler had standing or raised germane claims, granting plaintiff's summary judgment motion as a matter of law against Kessler was the appropriate action for the court to take, including striking his answer and dismissing with prejudice his remaining claims. Delacruz, 447 N.J. Super. at 8 ("Whether claims are barred by a preclusionary doctrine is a question of law,

which may be resolved by summary judgment unless there are bona fide factual disputes about the elements necessary for application of the doctrine(s)."). Indeed, summary judgment is appropriate where the moving party is entitled to judgment as a matter of law and there are no issues of material fact in dispute. Brill, 142 N.J. at 540; R. 4:46-2(c).

Hence, we affirm the trial court's order granting plaintiff's motion to strike Kessler's answer and dismiss with prejudice his counterclaims and third-party complaint. Since these are threshold and dispositive questions, we need not address Kessler's remaining claims and arguments.

Any arguments not addressed lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5423-18